WEISS, COLLECTOR OF INTERNAL REVENUE, *v.*
STEARN.

WEISS, COLLECTOR OF INTERNAL REVENUE, *v.*
WHITE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SIXTH CIRCUIT.

Nos. 262 and 263. Argued April 30, 1924.—Decided May 26, 1924.

Pursuant to an agreement, the stockholders of an Ohio corporation
deposited with a trustee their certificates for all its capital stock
($5,000,000), and other parties deposited $7,500,000; the depositors
organized a new Ohio corporation with authorized capital stock of
$25,000,000, and powers like those of the old corporation; the new
corporation took over the property, assets and business of the
old one, assuming its contracts and liabilities, and delivering cer-
tificates for all its stock to the trustee, in payment, and carried on
the business under the old management; the old corporation was
dissolved; the trustee delivered half of the new stock and the whole
$7,500,000 to the old stockholders *pro rata*, and the other half of
the new stock to the other depositaries; so that each owner of old
stock received cash, and also shares of new stock representing an
interest in the corporate property and business half as large as he
had before. *Held:*
(1) That the new stock received by the old stockholders, unlike the
money, was not the proceeds of a sale but represented part of the
same capital investment as their old shares, without any segregated
gain taxable as income under the Revenue Act of 1916. P. 252.
(2) The transaction amounted to a financial reorganization under
which each stockholder retained half his interest and disposed of the
remainder. P. 254.
(3) Questions of taxation must. be determined by viewing what was
actually done rather than the declared purpose of the participants.
*Id.*
(4) When applying the Sixteenth Amendment and income tax laws
enacted under it, the courts must regard matters of substance and
not of mere form. *Id.*
285 Fed. 689, affirmed.

CERTIORARI to judgments of the Circuit Court of Appeals affirming judgments recovered by the respondents in the District Court in their actions to recover money paid under protest as income taxes.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for petitioner.

I. The transaction between the respondents and Eastman, Dillon & Company was in fact and legal effect a sale by the respondents of all their stock in the National Acme Manufacturing Company for $300 a share, payable $150 in cash and $150 in securities of another corporation.

The transaction, of course, must be considered in the light of the agreement. That agreement was evidently drawn with care, is free from ambiguity, and expresses clearly a definite intent. The "vendors" agree to and will sell all their shares, and the "purchasers" agree to and will purchase the same from them, as well as any and all shares the holders of which deposit them with the depositary named, for the price of $300 per share, payable one-half in cash and one-half in securities "as hereinafter set forth." The contract was made upon the express condition that it should not become operative unless at least 80 per cent. of the entire outstanding stock should be deposited "for sale." Of course it is apparent that the purpose of Eastman, Dillon & Company, the purchasers, was to become the owners of a half interest in a very profitable business, and we all know that one who holds 50 per cent. of the stock of a corporation practically controls it, where the other half is held by numerous stockholders. The other terms of the agreement show that the purchasers were not buying one-half of the stockholders' stock. They were purchasing the company for the purpose of reorganizing it and placing themselves in control;

so the agreement provides that they shall have an opportunity to investigate the representations made by the vendors with respect to the earnings of the company and the title to the company's property, and, if that examination was unsatisfactory, the purchasers would not be required to carry out the agreement.

The vendors, owning 14,000 shares out of a total issue of 50,000 shares, were to deposit their stock with the depositary, as were all other stockholders who wished to take advantage of the agreement. The stock, as is usual in such transactions, was to be endorsed in blank for transfer, so as to constitute the vendees attorneys in fact and proxies, which would enable them, of course, to vote the stock as it became necessary to transfer the assets to the new company and dissolve the old one. The use of the words "vendors" and "purchasers" throughout the agreement shows that these words were used in no other sense than the usual one of such language in similar agreements. If less than the entire amount of the capital stock of the National Acme Manufacturing Company was deposited, the depositary was to retain ten shares of stock of the new company and $150 in cash on account of each share not deposited until "adjustment for the purchase of such nondeposited stock under the laws of Ohio, or otherwise, can be had." The "purchasers" were to make whatever adjustment might be necessary to acquire such nondeposited stock and to that end might use the shares of stock and money retained by the depositary, and, when the nondeposited stock had been acquired "by the purchasers," the depositary was to turn over to the purchasers any shares or money then remaining in its hands, provided, however, that the vendors, if they desired, should have the right to proceed "in the purchase of such nondeposited stock to the extent and upon the terms which may be deemed equitable" by two gentlemen named, and with the further provision that in lieu of their portion of

the retained stock the purchasers might substitute and deposit such other collateral as might be approved by the two gentlemen.  The concluding paragraph of the agreement is also significant, providing for modifications or additions to be made by those gentlemen but denying them power to modify in regard to "prices of the stock sold or time of payment therefor."

II. The excess of both the cash and the value of the National Acme Company's stock, received by the respondents, over the value of the National Acme Manufacturing Company's stock as of March 1, 1913, or, in the case of stock purchased since that date, its cost, was income for the year 1916.

The transaction comes clearly within the language of the act, taxing profits derived from "sales or dealings in property."

The receipt of property may as well constitute income to the taxpayer as the receipt of money.  *Peabody* v. *Eisner,* 247 U. S. 347; *Eisner* v. *Macomber,* 252 U. S. 189; *United States* v. *Phellis,* 257 U. S. 156.

Before the transaction, the plaintiffs' stock reflected their original capital investments plus the accretions which had resulted through the old company's business activities and constituted its surplus—a surplus in which they as individual stockholders had no property interest except as it increased the value of their capital.  When, however, they sold that stock for its par value and received in addition cash and securities in another corporation, it is clear that they received assets of exchangeable and actual value severed from their capital interests in the old company.  *United States* v. *Phellis, supra; Rockefeller* v. *United States,* 257 U. S. 176; *Cullinan* v. *Walker,* 262 U. S. 134; *Eisner* v. *Macomber, supra.*  When the exchange had been completed, each stockholder had realized his entire investment and profit in the old company, even though he immediately put part of it into a new venture.

III. The stock received by respondents was, in fact and legal effect, different property from the Company stock which they disposed of.

The ownership by one corporation of the stock of another corporation, or the ownership by the stockholders of one corporation of the stock of another corporation, does not destroy the distinct legal entity of the two corporations. *Pullman's Palace Car Co.* v. *Missouri Pacific Ry. Co.,* 115 U. S. 587; *Peterson* v. *Chicago, etc. Ry. Co.,* 205 U. S. 364.

In cases involving taxation, the courts have consistently refused to disregard the principle of corporate entity. *Eisner* v. *Macomber,* 252 U. S. 189; *Osgood* v. *Tax Commissioner,* 235 Mass. 88; *Stone* v. *Tax Commissioner,* 235 Mass. 93; *United States* v. *Phellis,* 257 U. S. 156.

All the considerations, except that of incorporation under the laws of different States, mentioned by the Court in the *Phellis Case* as supporting the corporate entities of the corporations there in question, are present here. Furthermore, while in the *Phellis Case* the stockholders of the two corporations were identical, in the case at bar the stockholders of the National Acme Manufacturing Company and the National Acme Company were not identical.

*Southern Pacific Co.* v. *Lowe,* 247 U. S. 330, and *Gulf Oil Corporation* v. *Lewellyn,* 248 U. S. 71, are clearly distinguishable. See *Peabody* v. *Eisner, supra,* p. 349; *Lynch* v. *Hornby,* 247 U. S. 339, 346.

The fact that the respondents acquired no increase in aggregate wealth through the sale or exchange of their stock is not material in determining whether they experienced a realization of profits constituting income. *United States* v. *Phellis, supra,* p. 171.

*Mr. Charles P. Hine,* with whom *Mr. Amos Burt Thompson* was on the brief, for respondent in No. 262.

I. The contract was not for the sale of the stock to Eastman, Dillon & Company at $300 per share, but was for the sale of a half interest at $150, and the substitution for the other half interest of stock in which Eastman, Dillon & Company never had any interest, legal or equitable. The new stock represented a continuation of the same corporate enterprise and the entire equitable interest in the stock which plaintiff received was at all times owned by him.

The fact that one clause of the contract, pursuant to which the exchange of the stock was made, recited that stockholders in the old company agree to sell their stock "for $300 per share, payable one-half in cash and one-half in securities, as hereinafter set forth," did not make the transaction the equivalent of a sale for cash.

The contract was of a dual nature, being in part a contract for the sale of a half interest to Eastman, Dillon & Company, and in part a reorganization agreement between the old stockholders and Eastman, Dillon & Company, providing for the creation by the vendors and purchasers of a new company to stand in the place of the old, and for the distribution by the trustee of the stock of the new company to the old stockholders and to Eastman, Dillon & Company, in proportion to their respective interests, as fixed by the trust agreement. The transaction as carried out resulted in the sale of such half interest and the continuance of the same business.

II. Plaintiff realized no income from the receipt of stock in the National Acme Company, since his capital interest in the same single corporate enterprise continued without any change in the nature of his investment. *Eisner* v. *Macomber,* 252 U. S. 206; *United States* v. *Phellis,* 257 U. S. 156.

III. The same result could have been attained by a process of internal reorganization, and if this manner of procedure had been adopted, no taxable income would have resulted. See *Cullinan* v. *Walker,* 262 U. S. 134, 137.

IV. The mere difference in corporate entity between the National Acme Manufacturing Company and the National Acme Company is not a sufficient basis for holding that income was realized by the exchange of one stock for the other. *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330.

We must assume that it was the purpose of Congress to refrain from taxing as income derived from a transaction the mere increase in capital value of an investment which after such transaction remains in truth and in substance the same investment as before.

After Eastman, Dillon & Company acquired a one-half interest in the stock of the National Acme Manufacturing Company by depositing the cash consideration therefor, they and the other stockholders of the National Acme Manufacturing Company were to unite in forming a new corporation and in causing the old company to transfer its assets to the new. The new company was therefore a mere agency of the stockholders of the old company and subject in all things to their proper direction and control. The principle of *Southern Pacific Co.* v. *Lowe, supra,* is therefore directly applicable. *Gulf Oil Corporation* v. *Lewellyn,* 248 U. S. 71.

In the present case plaintiff merely received different certificates of stock which represented exactly the same proportionate interest in a corporation having the same stockholders, the same assets, powers, purposes and management as the original company.

V. The rule of construction announced in previous decisions prevents a holding that income was realized by the transaction in the case at bar. *Gould* v. *Gould,* 245 U. S. 151.

*Mr. John G. White,* with whom *Mr. A. V. Cannon* and *Mr. L. C. Spieth* were on the brief, for respondent in No. 263.

Looking through all the forms and machinery, the real transaction is this: The old stockholders sold half their stock to Eastman, Dillon & Company for $7,500,000, and deposited their stock, transferred in blank, with the depositary, subject to this agreement. Thereby Eastman, Dillon & Company became owners of half the stock of the Manufacturing Company and the old stockholders remained the owners of the other half of the stock of the Manufacturing Company. Then the two sets together, thus constituting the whole body of the stockholders of the Manufacturing Company, organized the new company, and the two sets together constituting the whole body of stockholders of the old company as such, through the corporate action agreed to be taken by the agreement, transferred all its assets to the new company for all the stock of the new company and its assumption of all the debts of the old company. The stockholders of the old company having thus become the owners of all the stock of the new company, and it being part of the agreement that this stock shall be divided ratably among the stockholders of the old company, half of this stock went to Eastman, Dillon & Company, or their nominees, they having become the owners of half of the stock of the old company. Half of it, of course, went to the old stockholders of the old company. This being the nature of the transaction, Eastman, Dillon & Company, for their half of the stock of the old company, got half of the stock of the new company or five new shares for one old, and the old stockholders, for each share of the half of the stock of the old company which they owned, after selling the other half to Eastman, Dillon & Company, got five shares of the new company, the new company having exactly the same powers and the same purposes as the old company, and exactly the same assets and the same liabilities. As a consequence, by this part of the transaction there was neither gain nor loss. Each stockholder

simply had a certificate for a larger number of shares than he had before.

There has been no segregation of any of the assets of either the old company or the new company, no stock issued against any part of the assets of the old company or the new company, but the entire assets of the old company, without addition or diminution, which before was the property of all the stockholders of the old company, became the property of all the stockholders of the new company, and represented by all its stock.

Treating it as a sale to Eastman, Dillon & Company of the entire stock for $7,500,000 of cash and $12,500,000 of stock of the new company, the only profit obtained was from the payment of the cash, for half the stock of the new company was of precisely the same value as half the stock of the old company, represented exactly the same assets, the same liabilities, devoted to the same purposes as before, and hence, so far as the old stock was paid for by the new stock, no profit was made, no gain received, and hence no income.

Taking either line of reasoning,—there was no segregation as to the old stockholders of one-half of their stock of any part of the assets, which all still remained in the corporation, devoted to the same uses and purposes as before, subject to corporate control, without any power on the part of the owners of the stock to segregate any part thereof without corporate action. *Eisner* v. *Macomber,* 252 U. S. 189; *Towne* v. *Eisner,* 245 U. S. 418; *United States* v. *Alpha Portland Cement Co.,* 242 Fed. 978; s. c. 257 Fed. 432; 261 Fed. 339; *Peabody* v. *Eisner,* 247 U. S. 347; *Lynch* v. *Hornby,* 247 U. S. 339; *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn,* 248 U. S. 71.

Where there are doubts in the construction of a tax law, they should be resolved in favor of the taxpayer and against the Government. *Gould* v. *Gould,* 245 U. S. 151;

*Crocker* v. *Malley,* 249 U. S. 223.    See further *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn,* 248 U. S. 71; *United States* v. *Mellon,* 279 Fed. 910; s. c. 281 Fed. 645.

Mr. Justice McReynolds delivered the opinion of the Court.

Respondents brought separate actions to recover money which they alleged petitioner unlawfully demanded of them as income tax.    The question for our decision is this: Did they, by the transactions hereinafter detailed, dispose with profit of all or, as they maintain, of only half their interests in the National Acme Manufacturing Company, within the income provisions, Revenue Act of 1916 (c. 463, 39 Stat. 756, 757).    Both courts below upheld their claims and gave judgments for appropriate refunds.

Under a definite written agreement the following things were done—

(A) Respondents and other owners delivered duly endorsed certificates representing the entire capital stock ($5,000,000) of the National Acme Manufacturing Company, incorporated under laws of Ohio—the old corporation—to The Cleveland Trust Company, as depositary. Messrs. Eastman, Dillon & Company deposited $7,500,000 with the same Trust Company.    Representatives of both classes of depositors thereupon incorporated in Ohio the National Acme Company—the new corporation—with $25,000,000 authorized capital stock and powers similar to those of the old corporation.    Pursuing the definite purpose for which it was organized, the new corporation purchased and took over the entire property, assets and business of the old one, assuming all outstanding contracts and liabilities, and in payment therefor issued to the Trust Company its entire authorized capital stock.    It continued to operate the acquired business under the former management, and the old corporation was dissolved.

(B) The Trust Company delivered to Eastman, Dillon & Company certificates for half the new stock—$12,500,-000. To the owners of the old stock—to each his pro rata part—it delivered certificates representing the remaining half, together with the $7,500,000 cash received from Eastman, Dillon & Company. The owner of each $100 of old stock thus received $150 cash, also $250 of new stock representing an interest in the property and business half as large as he had before. Prior to the specified transactions his interest in the enterprise was 100/5,000,-000; thereafter it became 250/25,000,000, or 50/5,000,000.

The Collector ruled that each old stockholder sold his entire holding, and assessed respondent accordingly for resulting profits. Adopting a different view, the courts below held that he really sold half for cash and exchanged the remainder, without gain, for the same proportionate interest in the transferred corporate assets and business.

We agree with the conclusion reached below. The practical result of the things done was, a transfer of the old assets and business, without increase or diminution or material change of general purpose, to the new corporation; a disposal for cash by each stockholder of half his interest therein; and an exchange of the remainder for new stock representing the same proportionate interest in the enterprise. Without doubt every stockholder became liable for the tax upon any profits which he actually realized by receiving the cash payment. If by selling the remainder he hereafter receives a segregated profit, that also will be subject to taxation.

Petitioner relies upon *United States* v. *Phellis*, 257 U. S. 156, and *Rockefeller* v. *United States, id.* 176; also *Cullinan* v. *Walker*, 262 U. S. 134, which followed them. As the result of transactions disclosed in the *Phellis* and *Rockefeller Cases*, certain corporate assets not exceeding accumulated surplus were segregated and passed to individual stockholders. The value of the segregated thing

so received was held to constitute taxable income. Cullinan's gain resulted from a dividend in liquidation actually distributed in the stock of a holding company incorporated under the laws of a foreign State, not organized for the purpose of carrying on the old business, and which held no title to the original assets.

*Eisner* v. *Macomber,* 252 U. S. 189, gave great consideration to the nature of income and stock dividends. It pointed out that, within the meaning of the Sixteenth Amendment, income from capital is gain severed therefrom and received by the taxpayer for his separate use; that the interest of the stockholder is a capital one and stock certificates but evidence of it; that for purposes of taxation where a stock dividend is declared, the essential and controlling fact is that the recipient receives nothing out of the company's assets for his separate use and benefit. The conclusion was that, " having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment."

Applying the general principles of *Eisner* v. *Macomber,* it seems clear that if the National Acme Manufacturing Company had increased its capital stock to $25,000,000 and then declared a stock dividend of four hundred per cent., the stockholders would have received no gain—their proportionate interest would have remained the same as before. If upon the transfer of its entire property and business for the purpose of reorganization and future conduct the old corporation had actually received the entire issue of new stock and had then distributed this pro rata among its stockholders, their ultimate rights in the enterprise would have continued substantially as before—the capital assets would have remained unimpaired and nothing would have gone therefrom to any stockholder for his separate benefit. The value of his holdings would not have changed, and he would have retained the same essential rights in respect of the assets.

We can not conclude that mere change for purposes of reorganization in the technical ownership of an enterprise, under circumstances like those here disclosed, followed by issuance of new certificates, constitutes gain separated from the original capital interest. Something more is necessary—something which gives the stockholder a thing really different from what he theretofore had. *Towne* v. *Eisner,* 245 U. S. 418; *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn,* 248 U. S. 71. The sale of part of the new stock and distribution of the proceeds did not affect the nature of the unsold portion; when distributed this did not in truth represent any gain.

Considering the entire arrangement we think it amounted to a financial reorganization under which each old stockholder retained half of his interest and disposed of the remainder. Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants; and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form.

*Affirmed.*

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS dissent on the ground that the case falls within the rule declared in *Cullinan* v. *Walker,* 262 U. S. 134.