J. Hampton Hoult, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Martin J. Dregge, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 45782, 45783.   Promulgated September 21, 1931.

*F. E. Seidman, C. P. A.,* and *J. S. Seidman, Esq.,* for the petitioners.

*B. M. Coon, Esq.,* for the respondent.

82

OPINION.

LOVE: The principal question in these proceedings is whether under the contract with Brewer petitioners in substance exchanged their stock in the old company solely for stock in the new, or, whether the actual sale by petitioners to Brewer of their stock in the old company

and the investment by them of the proceeds in the stock of the new company constituted the substance as well as the form of the transactions set out in our findings.

The respondent contends that these proceedings are governed by the following provisions of section 203 of the Revenue Act of 1926:

SEC. 203. (b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

SEC. 203. (h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

There can be no question as to what was actually done. The facts were stipulated. Petitioners actually sold their stock in the old company to Brewer, and with the proceeds purchased preferred and no par value common stock in the new company. But, since petitioners were contractually bound to subscribe for the new stock, should we disregard the sale and say that was a mere matter of form and an act entirely unnecessary to bring about the ultimate result? The respondent urges us to do so and to hold that the substance of the execution of the contract with Brewer was that of exchanging old stock solely for new. We can not so disregard the real and actual things that occurred and hold the petitioners to have done something which in fact they did not do. They actually sold their stock in the old company and with the proceeds purchased stock in the new. True, it may be that the same ultimate result might have been accomplished if petitioners had exchanged directly their stock in the old company solely for stock in the new. But this is not what actually occurred. Income-tax liability must be determined by what actually takes place, rather than by what might have taken place.

In *C. W. Ray*, 19 B. T. A. 1154, we held that where three individuals transferred certain assets to a newly organized corporation and received the corporation's check, which they immediately indorsed and turned back to the corporation in payment for its capital

stock, the transaction was a sale resulting in profit at the time the check was received, rather than in substance a transfer of assets to the corporation for stock, which would have been nontaxable under section 202 (c) (3) of the 1921 Act. The Seventh Circuit affirmed our decision in this case from the bench and without opinion. In the course of our opinion in the *Ray* case we said:

It is contended that the substance of the whole transaction was that assets were issued for stock, and that substance should control over the form. The Supreme Court has frequently said that it would look to substance and not form. *Eisner* v. *Macomber*, 252 U. S. 189. But we do not believe in a case such as this that what a person actually does should be ignored, and that one be held to do one thing when another thing was done. What is actually done fixes the tax liability and not what might have been done, even though the same result in the end might have been reached in another way or by another process.

To the same effect see our holdings in *John G. Lonsdale*, 11 B. T. A. 659; affirmed by the Eighth Circuit at 32 Fed. (2d) 537; *Edward A. Langenbach*, 2 B. T. A. 777; *B. F. Saul et al.*, 4 B. T. A. 639; *James F. Shea et al.*, 11 B. T. A. 557; affirmed by the Court of Appeals of the District of Columbia at 36 Fed. (2d) 546; and *William H. Mullins*, 14 B. T. A. 426. In *United States* v. *Phellis*, 257 U. S. 156, the Supreme Court, *inter alia*, said: " In such matters, what was done, rather than the design and purpose of the participants, should be the test."

It is, therefore, our opinion that petitioners are entitled to the capital net losses of $56,375 and $53,875 referred to in our findings. It thus becomes unnecessary to consider petitioners' alternative assignment of error.

*Judgment will be entered under Rule 50.*