CLEMMONS v. COMMISSIONER OF INTERNAL REVENUE (two cases).

GORDON v. SAME (two cases).

Nos. 6338–6341.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1931.

Rehearing Denied Jan. 16, 1932.

L. J. Benckenstein, of Beaumont, Tex., J. Blanc Monroe, Monte M. Lemann, and Nicholas Callan, all of New Orleans, La., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, and A. H. Conner, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. A. Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

These are petitions by Sol E. Gordon and J. C. Clemmons and the wife of each to review a decision of the Board of Tax Appeals whereby each petitioner was held to have realized a taxable gain during the year 1925 in a transaction involving the transfer to Saenger Amusement Company of one-half of the capital stock of the Jefferson Amusement Company; the other half being retained by the petitioners. The two wives are concerned because of the community property laws of Texas, but they do not figure otherwise in the transaction. Gordon and Clemmons owned the entire five hundred shares of the capital stock of Jefferson Amusement Company, which had cost them $13,030.16. Threatened with competition in the local moving picture business by Saenger Amusement Company, they arranged, as they describe it, "to go fifty-fifty" with that company in it and in the building of a better theater. On February 17, 1925, a written agreement was made between Gordon and Clemmons of the first part, and Saenger Amusement Company of the second, which, after preliminary recitals, stated: "Now, therefore, said parties of the first part, for and in consideration of the sum of $87,500.00 agreed to be paid to them by said Saenger Amusement Company, have transferred, assigned, endorsed and delivered, and by these presents do transfer, assign, endorse and deliver unto the said Saenger Amusement Company two hundred and fifty shares, or an equal undivided one-half of the capital stock of the Jefferson Amusement Company." It was provided that the mode and manner of payment was to be later agreed on. The interest of Saenger Amusement Company in the earnings was to date from March 1, 1925, and Gordon and Clemmons were immediately to negotiate with the owners of a named theater for a ten-year lease thereon. On February 28th a supplemental agreement was made, joined in by the Jefferson Amusement Company, which recited the former agreement, and stated "that Sol E. Gordon and J. C. Clemmons do now sell, convey and deliver unto said Saenger Amusement Company said two hundred and fifty shares of the capital stock of Jefferson Amusement Company" in identified certificates. "The consideration above referred to was and is agreed to be paid by the Saenger Amusement Company to Sol E. Gordon and J. C. Clemmons as follows, to-wit, the sum of $10,000.00 cash in hand paid to said Sol E. Gordon and J. C. Clemmons, the receipt of which is hereby acknowledged and confessed, and the balance evidenced by eight promissory notes executed by Saenger Amusement Company and payable to Sol E. Gordon and J. C. Clemmons" as described, bearing 7 per cent. interest from date and to be secured by the transferred stock certificates as collateral attached.

There were mutual warranties against any local competition and other agreements, including one by Gordon and Clemmons to pay off all liabilities of Jefferson Amusement Company on March 1, 1925. The only obligation assumed by Jefferson Amusement Company related to the erection of a new theater. The agreement as to that was that the maximum to be invested in land, construction, and equipment should be $400,000, Saenger Amusement Company obligating itself to furnish up to $100,000 as needed, Gordon and Clemmons $100,000, and Jefferson Amusement Company by bonds or otherwise the balance. There was no express agreement as to whether the theater should be owned in proportion to the money advanced or whether the advances should be treated as proportionate contributions to the capital of Jefferson Amusement Company. The directors of the Company were to be increased to six, of which Gordon and Clemmons were to name three and Saenger Amusement Company three. On January 9, 1926, a further supplemental agreement was signed by all parties, increasing the cost limit of the theater to $500,000, and the contributions of Saenger Amusement Company and Gordon and Clemmons to $120,000 each. In July, 1926, the capital stock was increased to $750,000, and a total of 3,750 shares was issued to Gordon and Clemmons, and a like amount to Saenger Amusement Company. It is found as a fact by the Board that on February 28, 1925, there was also an oral understanding between Gordon and Clemmons and

Saenger Amusement Company that, as the notes given by the latter were paid, the money would be accumulated in a special bank account by Gordon and Clemmons, to be used by them in making their contribution towards the building of the theater. During 1925 there was no special account, but the payments went into the personal accounts at the bank of Gordon and Clemmons. Beginning February, 1926, there was a special account in another bank in their name. The accumulating balance was invested from time to time in interest-bearing stocks and loans in the name of Gordon and Clemmons, the income from which was returned to the account. The money was at all times subject to check by Gordon and Clemmons, and never by Jefferson Amusement Company. Payments to that company were by check drawn in its favor. The last payment to it was $12,500 on January 13, 1928, shortly after which the account was divided between Gordon and Clemmons and closed. The total contribution by Gordon and Clemmons to the theater fund was $40,684.75, and by the Saenger Amusement Company the same; Jefferson Amusement Company having paid the balance. On these facts the United States contend that there was a sale by Gordon and Clemmons of 250 shares of stock in Jefferson Amusement Company in February, 1925, on which a large profit was realized, notwithstanding part of the proceeds was straightway pledged to secure performance of an obligation. Gordon and Clemmons contend that no gain was realized, at least not in 1925; the substance of the whole transaction being an enlargement and reorganization of the Jefferson Amusement Company wherein Saenger Amusement Company obtained one-half of its stock in return for money contributed through Gordon and Clemmons to that corporation.

■■ The taxpayers' contention is not sustainable. It is true that in tax matters the courts must regard the substance rather than the mere form of the transaction; but effect must be given to what persons have done rather than what they say they intended. Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Pugh et al. v. Commissioner (C. C. A.) 49 F.(2d) 76, 77. Much less can courts regard that which might have been done but was never even attempted. It is true, as is argued, that Jefferson Amusement Company might have doubled its stock at the outset and sold the increase to Saenger Amusement Company for a sum of $175,000, the amount at which its assets were valued, as a result of which Gordon and Clemmons would have been left with one-half its stock

and would have realized no gain. But this was not done. The increase of capital and division of the stock made in July, 1926, was not in pursuance of any agreement had in 1925. The Jefferson Amusement Company had no part in the original main transaction. It sold no stock and was to get no cash. In both the first and second agreements in the plainest words it was said that Gordon and Clemmons were selling the stock. They received and receipted for the cash payment, and the notes representing the balance of the purchase money were payable to them. The proceeds were deposited by them in bank to their own credit. The written agreement to help build a theater in the future did not require that any particular money be used; and, if it had, it would not prevent the gain from the sale which produced the money being taxable, there being merely an investment provided for it in advance of its receipt. Lonsdale v. Commissioner (C. C. A.) 32 F. (2d) 537; Detroit Egg Biscuit Co. v. Commissioner, 9 B. T. A. 1365; Hoult v. Commissioner, 24 B. T. A. 79. The oral understanding that the payments on the notes should be retained to insure that Gordon and Clemmons would have cash to carry out their agreement to help finance the construction of the theater was probably unenforceable in the face of the parol evidence rule. Pugh et al. v. Commissioner, supra. But, if otherwise, it was at most a pledge of the money to this end, and no more hindered the ownership of the notes and cash passing to Gordon and Clemmons that the pledge of the stock certificates hindered the ownership of them passing to Saenger Amusement Company. Jefferson Amusement Company had no right or title to the notes or money unless and until Gordon and Clemmons should pay the money over to it. In point of fact, only $40,684.75 of it ever went to Jefferson Amusement Company, and $25,000 of that amount was not paid until December, 1927, and January, 1928. Otherwise Gordon and Clemmons owned and used the money as their own, together with the interest earned on it. There was a completed sale of the stock by Gordon and Clemmons in 1925 resulting in gain; in nowise defeated by the collateral agreement to make future contribution to or for the use of the corporation, or by the pledge of the purchase price to secure this being done, or by the actual use of part of it in making the contribution.

■ A subsidiary question is whether the gain should be reduced by the whole or only by half of the $12,346.79 paid out by Gordon and Clemmons March 1, 1925, in discharging

pursuant to agreement the liabilities of Jefferson Amusement Company as of that date. This was agreed to be done in order to make the whole stock worth the $175,000 which had been agreed on as the value of the assets. The payment was an additional capital investment by Gordon and Clemmons which added $6,173.39 to the value of each half of the stock. In selling one-half, Gordon and Clemmons are entitled to deduct from the gain only $6,173.39 as part of the cost of that half. The remaining $6,173.39 must stand over until the other half of the stock shall be disposed of by them.

We agree with the conclusions of the Board of Tax Appeals, and the petitions to review are denied.