SAGE v. COMMISSIONER OF INTERNAL REVENUE.
No. 100.

Circuit Court of Appeals, Second Circuit.
April 6, 1936.

L. HAND, Circuit Judge, dissenting.

Ellsworth C. Alvord and Floyd F. Toomey, both of Washington, D. C. (Louis Quarles and L. J. Burlingame, both of Milwaukee, Wis., and Edward H. McDermott, of Chicago, Ill., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The petitioner owned 1,029 shares of the common stock of the Kimberly-Clark Company, a paper manufacturer of Neenah, Wis. In 1920 it organized a corporation, later called the Kotex Company, to which it transferred its cellucotton absorbent wadding business owning 89 per cent. of the capital stock, and the officers and employees of the latter company owned 11 per cent. Until 1927, the business of both was carried on at the plant at Neenah, Wis., with joint management, manufacturing, and office facilities.

The Kimberly Company manufactured and sold the absorbent wadding to the Kotex Company, and the latter fabricated the

*Writ of certiorari granted 56 S.Ct. 947, 80 L. Ed. ——.

material into specialties which it sold under trade-names. The Kotex business grew rapidly, so that it became the Kimberly Company's best customer, and this gave rise to problems of management, advertising, and distribution. Selling its articles on a national scale to thousands of distributors, business judgment dictated the need of changing the main office of the Kotex Company to Chicago, where it might obtain more extensive credits and collection facilities than were possible at Neenah, Wis. It was considered necessary for business reasons to separate the operations of the two companies by a reorganization. A new corporation was organized, and there was an exchange of stock of the Kotex Company and the acquisition of its assets by the new corporation; also the distribution of 11 per cent. of the new company's stock to the minority stockholders of the Kotex Company and 89 per cent. to the stockholders of the Kimberly Company. To accomplish this, a deposit agreement dated November 1, 1926, was signed by the Kimberly Company and other stockholders of the Kotex Company; also by all the stockholders of the Kimberly Company and by a deposit committee of five members, who were the principal directors and stockholders of the Kimberly Company. The agreement vested absolute power in the committee to carry through the contemplated reorganization, and it was empowered to do anything it deemed expedient effectively to carry out the general plan. The owners of the Kotex Company stock obligated themselves to deposit their stock with the committee to be "held by the sole direction of the committee" with power to act as "the absolute owner of the shares so deposited." It provided that the Kimberly Company might distribute its stock in the Kotex Company, in which event the shares so distributed would be issued to the deposit committee and would be bound by the deposit agreement.

The reorganization plan of the Kotex Company was executed December 1, 1926, by Kotex Company, Kimberly Company, and the deposit committee and certain stockholders of both companies. It contained a concise statement of the plan agreed upon, and provided "that it is the understanding of the parties hereto that each and every of the steps as herein above outlined and of the provisions of this contract are part of a plan of reorganization of the Kotex Company (Wisc.) and its business."

The deposit committee organized, on December 8, 1926, under the laws of Delaware, a corporation named International Cellucotton Products Company. On January 3, 1927, the Kimberly Company delivered all of its stock in the Kotex Company directly to the committee and adopted a resolution reciting that the company had become a party to the plan and provided that "for the purpose of carrying out and effectuating the reorganization plan as contemplated in the deposit agreement * * * and as agreed upon in the reorganization plan * * * a dividend be declared in the form of 44,749 shares of no par capital stock of the Kotex Company," and that the dividend be paid by distributing to the holders of the common stock of the Kimberly Company these shares pro rata in proportion to their stock holdings of the Kimberly Company as of that date. The shares were to be delivered to the deposit committee to the extent that the stockholders signed the deposit agreement or the reorganization agreement and that the request received from the deposit committee addressed to the Kimberly Company be complied with and stock certificates issued in accordance therewith. On the same day, Kimberly Company indorsed in blank the certificates representing 89 per cent. stock interest in the Kotex Company and delivered them to the Kotex Company. It thereupon issued new certificates pro rata in the names of the Kimberly Company stockholders and delivered the same to the deposit committee. Upon the receipt of these certificates in this form, the deposit committee indorsed them in blank, delivered them to the Kotex Company, and received in exchange one certificate in the name of the deposit committee. The following day, the deposit committee exchanged this certificate representing all the stock of the Kotex Company for all the stock of the International Cellucotton Products Company which was issued in the name of the deposit committee. Thereupon the International Cellucotton Products Company and its newly organized subsidiaries took over substantially all the assets of the Kotex Company.

In completing the organization of the International Cellucotton Products Company and its subsidiaries, the deposit committee selected as officers and directors individuals who were officers and directors of the Kimberly Company and who were officers and directors of the Kotex Company. The deposit committee, on February 2, 1927, thereupon notified the deposi-

tors of the Kotex Company stock that they were entitled to receive shares of preferred and common stock in the new International Cellucotton Products Company in proportion to the stock of the Kotex Company deposited by them.

The petitioner received 1,847 shares of common and 336 shares of preferred stock of the International Cellucotton Products Company by reason of his ownership of 1,029 shares of Kimberly Company.

Because of the resolution of January 3, 1927, and the delivery by the Kimberly Company of its Kotex Company stock to the Kotex Company and making out a certificate in the name of the Kimberly Company stockholders pro rata and the delivery of such certificates to the deposit committee, it was ruled by the Commissioner that the petitioner, as a stockholder of the Kimberly Company, received a distribution of the Kotex Company stock within the meaning of section 201 (a) of the Revenue Act of 1926 (44 Stat. 10), and such distribution was taxable as a dividend to the extent of the value of the stock. The Board of Tax Appeals held that the receipt by petitioner of the International Cellucotton Products Company stock, pursuant to the plan of reorganization, was a tax-free distribution under section 203 (b) (4) of the Revenue Act of 1926 (44 Stat. 12), but that intermediate in the execution of the unified plan petitioner constructively received from the Kimberly Company a taxable dividend of the Kotex Company stock.

By signing the deposit agreement, each stockholder agreed that his pro rata share of the Kotex Company stock should be delivered to the deposit committee as his "agent, attorney and representative"; the deposit committee thereafter to have full authority to bind and act for each depositor as fully as he might do as the absolute owner of the shares. Thus the Kimberly Company effectively divested itself of the ownership of the Kotex Company stock on January 3, 1923, and it follows that the petitioner is taxable under sections 201, 213 (a) of the Revenue Act of 1926 (44 Stat. 10, 23) upon his pro rata share of that dividend, unless some provision of the act grants him exemption.

The petitioner argues that there was no taxable gain to him within the statute. The Revenue Act 1926 provides, section 203 (c), 44 Stat. 12: "If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized." See Regulations 69, art. 1576.

The distribution to Kimberly Company's shareholders was avowedly pursuant to a plan of reorganization. The Board found that Kotex Company business needed a great amount of advertising and that Kimberly Company's biggest customers were publishers who forced Kotex to place its advertising with them, regardless of the fitness of their publications. Thus, independence for the Kotex Company seems a bona fide aim of the reorganization. The distribution accomplished this.

No securities in the Kimberly Company were surrendered by the petitioner. The stock distributed and taxed was the Kotex Company, a party to the reorganization. The petitioner was a shareholder in the Kimberly Company. Was that corporation a party to the reorganization? Section 203 (h) (2), Revenue Act 1926 (44 Stat. 12) reads: "The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

Although the Kimberly Company does not fall within this section, article 1577 provides: "This definition is not an all inclusive one, but simply enumerates certain cases with respect to which doubt might arise."

We can therefore look to the definition of a reorganization to determine the status of the Kimberly Company. Section 203 (h) (1) of the act (44 Stat. 12), provides: "The term 'reorganization' means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred."

Section 203 (i) of the act (44 Stat. 12) defines "control" as the ownership of at least 80 per cent. of the voting stock and of the total number of shares of all other classes of stock of the corporation.

The Kimberly Company transferred part of its assets, the Kotex stock, to International Cellucotton Products Company, and immediately after the transfer the control of the Cellucotton Company was in the Kimberly Company's stockholders. By the deposit agreement which all the Kimberly Company's shareholders had signed, they had authorized the committee to do what it did in organizing the Cellucotton Company and securing its stock in exchange for the Kotex Company stock, and they had expressly subjected to the agreement any Kotex Company stock which the Kimberly Company might declare as a dividend pursuant to the plan. The plan had been published, and it had outlined the procedure in the way it was accomplished. Thus, when the Kimberly Company declared its dividend of the Kotex Company stock, it knew that the shareholders were committed to convey this asset to the Cellucotton Company in exchange for its stock. The transaction took this form undoubtedly only because the Kimberly Company shareholders had already ceded their rights to the committee. Although the declaration of the January 3d dividend, considered apart from the plan in which it was a step, divested the Kimberly Company of the asset of the Kotex Company stock, the asset was in the first stage of being transferred to the Cellucotton Company in exchange for the issuance of a controlling part of that company's stock to the Kimberly Company shareholders. This was a "transfer" to the Cellucotton Company within section 203 (h) (1) (B), of the act (44 Stat. 12), and the Kimberly Company was a "party to a reorganization" within section 203 (c). The distribution to the petitioner was therefore not taxable, and the decision is reversed.

Decision reversed.

L. HAND, Circuit Judge (dissenting).

If the Kimberly Company had merely transferred its Kotex shares to the Cellucotton Corporation, and taken in exchange the Cellucotton shares for distribution, the transaction would have been within section 203 (h) (1) (A) Revenue Act 1926 (44 Stat. 12); that is, it would have been "the acquisition by one corporation" of a majority of the shares "of another corporation," and therefore a "reorganization." But the transaction did not take that form. The Kimberly Company declared the Kotex shares as a dividend to its own shareholders, and it was they, acting through the de-

posit committee, who exchanged them for Cellucotton shares. It is true that the Kimberly shareholders had already agreed that the Kotex shares, when distributed to them, should be delivered to the committee with power to exchange them for Cellucotton shares; and it is also true that that agreement prevented the shares from being taxable income of the Kimberly shareholders, who never got complete dominion over them. Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216; Matchette v. Helvering, 81 F.(2d) 73 (C.C.A.2). The Kimberly shareholders received any income only when the committee distributed the Cellucotton shares to them; but the Kimberly Company had finally parted with the Kotex shares when it declared the dividend, and the limitation upon the rights of its shareholders arose, not from any power or interest reserved to itself, but because of the cross interests created by the agreement between all the Kotex shareholders including those who were not Kimberly shareholders. There was never a "reorganization" between the Kimberly Company and the Cellucotton Corporation in the sense required by section 203 (h) (1) (A), because the Kimberly Company neither transferred the Kotex shares to the Cellucotton Company, nor acquired the Cellucotton shares itself. The only "reorganization" was between the Kotex Company and the Cellucotton Corporation when that company got all the Kotex assets in exchange for Kotex shares. Nor do I think that the Kimberly Company was "a party" to that "reorganization"; I do not believe that this phrase includes all corporations which are parties to one of the contracts of reorganization; as to that I cannot agree with the Board. "A party to the reorganization" is one of the necessary parties to a transaction detailed in section 203 (h) (1); such transactions are either (A), mergers and consolidations, or (B), purchases of property; or they are unilateral transactions, (C) and (D). Section 203 (h) (2) was added merely out of abundant caution; really it adds nothing to what went before. Thus the Kimberly shareholders were not shareholders of "a party" to any "reorganization" which took place.

In substance when all was over, what had happened was that the Kimberly Company having exchanged part of its property for new property had distributed it as a dividend to its own shareholders. I acknowledge that in substance what had happened was also that the Kimberly Compa-

ny had exchanged its Kotex shares for shares of the Cellucotton Company and had had these issued direct to its own shareholders. These two situations have different legal consequences, and the facts fit both equally well. It is indeed often said that taxation is a matter of substance, not of form, and perhaps at times that may be true, though I must own that to me it seems a doctrine more often disregarded than observed; but when a statute is drafted upon a concept like that of the reality of corporate personality, I do not see how that concept can fail to be determinative. I know of no way to solve the verbal riddle before us than by treating the form as real, and by forbearing to invoke a putative "substance" which on pursuit turns out to be an ignis fatuus. My brothers agree so far, but they choose a different formal mould from mine, which supports the ruling of the Board.