## BORLAND v. COMMISSIONER OF IN-TERNAL REVENUE.

### No. 7687.

Circuit Court of Appeals, Seventh Circuit.

Nov. 3, 1941.

Oscar D. Stern, Lincoln R. Clark, and Myron D. Davis, all of Chicago, Ill., for petitioner.

J. P. Wenchel, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Huber L. Will, of Washington, D. C., for respondent.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Petitioner sought to deduct real estate taxes, which he paid the County Collector of Cook County, Illinois for the years 1934; 1935, and 1936, from his taxable income. The deduction was disallowed by the Commissioner, for the alleged reason that petitioner owned neither the legal nor equitable title to the realty upon which he paid the taxes. The Board of Tax Appeals approved the action of the Commissioner.

Petitioner has appealed. Disposition of his appeal turns upon the particular facts of the case, which, fortunately, are neither involved nor in serious dispute.

A group of close friends, who had lived as neighbors in a part of the City of Chicago which had lost its choiceness as a residential section, desired to continue to live near each other. An apartment building, with single floor apartments, was less expensive than individual homes, and a plan was conceived, and carried out, which resulted in the purchase of real estate at 2450 Lake View Avenue, Chicago, upon which a twelve-story apartment building was erected. Each floor (with one exception) constituted a single apartment. There was mutuality of interest and confidence on the part of all. Title to the property was taken in the name of one of the members, Noble Judah. Each paid his respective share of the cost of the realty. An architect was employed to plan and design the general framework or structural part of the building, and each member paid his share of this cost. Each individual apartment, however, was left to the member to build, and he, in turn, employed his own architect and contractor, and the cost thereof was borne solely by such member. In-

dividuality of the members was manifested in the location of fireplaces, porches, bay-windows, bathrooms, etc. Only the vertical alignment of elevators and stairs indicated joint or common enterprise.[1] After the building was completed a realty company was employed to run the building, that is, look after janitor service, heating, and other common necessities.

The building was registered on the tax assessor's books as the property of Noble Judah and later as that of Chauncey Borland. It was assessed to him as an individual and not as trustee. The Collector of Cook County, as is his custom, issued tax bills in the name of the person to whom the property is assessed, and gave receipts to such party, irrespective of who paid the taxes. The Collector's books do not show the names of the individual members, who, in this case, paid the taxes.

Petitioner, on receipt of the entire tax bill, determined, by application of the proportional interest formula, the respective liabilities of the members for the tax assessed. All the other members sent him checks to cover their share of the taxes. Upon their receipt, petitioner forwarded them to the realty company who in turn delivered the checks to the local tax collector. The individuals always made their checks payable directly to the tax collector.

In July, 1922, a trust agreement was made whereby the title to the realty was placed in the trustees.

Respondent relies chiefly upon the existence of this trust indenture and certain leases, which, so it is argued, refute petitioner's claim of ownership of one of the apartments.

Under the trust indenture, title to the property was conveyed by the title holder, Mr. Judah, to four members of the group as trustees, and certificates of beneficial interest were then issued to each member.

It also provided that "its purpose was to acquire, and improve, rent and share in the profits and avails from and the proceeds of said real estate." It was provided that the certificates of interest should not entitle the holder to any claim or interest, legal or equitable, in any of the properties referred to in the indenture, but only to an interest in the net income, avails, and proceeds thereof. Certificates of interest were to be personal property, passing, upon the death of the holders, to their personal representatives and not to their heirs at law. The certificate was assignable by the holder thereof. The trust was to terminate at the expiration of twenty years from the date of the death of the survivor of certain named persons "now in life." The trustees were to hold the property and make improvements in accordance with such plans as seemed best to them and with such funds as might be supplied by the certificate holders, by proceeds of mortgages placed on the premises, or by other funds available for such purposes. They were "directed to insure, preserve, manage, operate, and rent, and to improve, alter, remodel, sell, lease or sub-lease all or any part of the trust property."

In short, the trust indenture gave the trustees the powers usually given to those holding and managing trust property for the benefit of others.

In May, 1924, the trustees and the certificate holders executed leases for 25 year terms, the particular floor or apartment space having been agreed upon and allocated by agreement prior to the construction of the building. They specified a fixed amount of annual rental, namely, $3,600.

Each member agreed to pay $300 a month to cover cost of upkeep, until a sufficient reserve was accumulated. The leases originally provided for $3,600 annual rental, but the trust indenture was amended in 1929 to cover *direct* tax liability of each member.

The amendment provided:

"Each holder of a certificate of interest * * * shall pay to the County Collector of Cook County, Illinois, on or before the fifteenth day of April in each year * * * that percentage of the general taxes levied on the real estate then held in trust under this Trust Indenture for the preceding calendar year which the percentage represented by the certificate of interest hereunder held by such holder bears to 100% * * *."

The Board of Tax Appeals concluded that the issue must be determined not by the actualities of the situation, but by the formal, legal relations created by the trust instrument.

The income tax statute provides (Sec. 23(c)):

"In computing net income there shall be allowed as deductions: * * *

---

[1] As one plumber said, "if an eel ever started at the top, he would be seasick before he reached the basement."

"(c) Taxes paid or accrued within the taxable year." 26 U.S.C.A. Int.Rev.Code, § 23(c).

The Regulations clarify and limit this deduction by providing, " * * * *In general taxes are deductible only by the person upon whom they are imposed.*"

■ The principle of applicable law may be stated thus:

"Taxes may be deducted only if they represent a liability *of the taxpayer;* they are not deductible if they are against the property of another person, such as the taxpayer's wife, or a prior owner, or if they are in essence a loan to another person, or if they represent a personal liability of another person. * * * The voluntary assumption of the tax liability of another does not give rise to a deductible item." (Paul & Mertens Law of Federal Income Taxation, § 25.07.

While the applicable principle of law is settled and is grounded on sound reason, its application to the hybrid and anomalous legal situation such as here exists is somewhat puzzling.

■ Payments for taxes, to be deductible, must be made by the person liable therefor, upon property owned by him.

Voluntary payment of another's taxes is non-deductible.

■ A cursory examination of the instant facts would indicate non-deductibility of the tax payments. The taxpayer parted with all legal and equitable title in the property when he signed the trust indenture, and was given back a certificate of interest, stated to be representative of personal property. That trust indenture, and the subsequently executed lease, if their form be conclusive, probably gave to the taxpayer the status of a lessee. A lessee may not deduct from his income the taxes he has paid as part of his rental.

To say petitioner was in fact a lessee, a tenant, is absurd. He was in every sense, except form, the owner. For convenience's sake, title was placed, first in one member, then later in four members, who were called trustees. We are not interested in what they were called. What were they in fact? There never was a meeting of the trustees. They never functioned in any respect, never executed a single power granted by the trust indenture. Petitioner alone acted and he, through a realty company. The members looked to petitioner and trusted him, and he gratuitously served all. The trust deed and the leases were not in fact what they appeared to be. They evidenced an effort to effectuate a cooperative venture, and to avoid the consequences of death of one who might be the grantee named in the deed.

The lease was dependent on the validity and existence of a trustee-status under the indenture. That document, if form only be looked to, placed title in the trustees, with powers to act. The owners were mere certificate holders under the indenture. But when we view the realities, we find the indenture was never carried out. It was a vacant house, never occupied. By its terms, powers were given. None was ever exercised. Nor was there any intention that they should be exercised. Trustees were created. They never qualified. They never acted.

The conclusion is inescapable that the indenture was an awkward artless effort to provide for the placing of the naked title in trustees, so that the complications, which would arise if death occurred to any individual holding the paper title, might be avoided.

Basing our conclusion on the facts, of which there were many, and not in dispute, we must hold that the trust indenture, so far as it manifested an active trust, never went into effect. More, it was never the understanding or intent of the parties that it should be effective.

As for the formal lease, it is sufficient to say that it is anomalous to find in any lease, the landlord and tenant to be one and the same party. To say that the petitioner, the landlord, leased the premises to petitioner, the lessee, and that the petitioner, the lessee, paid the taxes for the petitioner, the landlord, confounds the confusion.

Most persuasive of this conclusion was the agreement which all the parties signed. It was miscalled an amendment to the trust indenture. It, however, was in fact a separate agreement, consistent only with the non-existence of rights under the trust indenture. Under this separate agreement each party was obliged to pay, and did pay, the taxes on his particular apartment. It was not only the positive agreement of each of the parties, but each one carried it out to the letter. Such an agreement negatives the idea or contention that the trust indenture was ever carried out or put in force. It negatives the idea that the petitioner paid his taxes as a tenant of himself. He paid his taxes pursuant to his agree-

ment, which, in turn, was based upon his ownership of the apartment.

We feel justified, in differentiating this case, from those which hold as non-deductible, the taxes paid by a certificate holder under the ordinary trust deed.

In other words we are convinced that petitioner was paying real estate taxes on his *own* property, for which taxes he was *contractually* liable.

Our conclusion is predicated on these reasons:

I. Mr. Borland paid the tax
   a. *directly* to the state tax collector in
   b. an amount *exactly* proportionate to his share in the realty, pursuant to a
   c. *contractual liability* therefor.

II. The *entire* taxes were *imposed* by the tax assessor on Noble Judah or Mr. Borland, in their names as individuals, and not as trustees, and the taxes were not imposed upon the trust entity, the 2450 Lake View Ave. Trust.

III. The *trust* did *not* deduct the taxes in its return. It reported simply the monthly collections from the "lessees" to cover management and deducted current expenses which exceeded the collections, leaving no net taxable income.

IV. The statutes and regulations prescribe when a deduction is permitted, and the instant statute and regulation permit of the asserted deduction.

V. "Taxation is a practical matter," and in taxation problems, actualities and not form should control.

█ It is an oft-repeated truism that taxation is a practical matter or, stated in another way, substance and not form controls.

The most recent pronouncement to this effect was made by the Court in Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 278, 84 L.Ed. 319, Justice ⋅ Frankfurter speaking for the Court:

"We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' Corliss v. Bowers, 281 U S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L. Ed. 596, 97 A.L.R. 1355. 'A given result at the end of a straight path,' this Court said in Minnesota Tea Co. v. Helvering, 302 U.S. 609, 613, 58 S.Ct. 393, 395, 82 L. Ed. 474, 'is not made a different result because reached by following a devious path.' Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed, particularly in the provisions of a tax law like those governing installment sales * * *. Taxes cannot be escaped 'by anticipatory arrangements and contracts however skilfully devised * * * by which the fruits are attributed to a different tree from that on which they grew.' * * * What Lay gave, Griffiths in reality got, and on that he must be taxed."

In the same volume of the reports, the Court in the case of Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 210, 84 L.Ed. 226, speaking through Justice Black, said:

"In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding."

In United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 65, 66 L.Ed. 180, it was said:

"We recognize the importance of regarding matters of substance and disregarding forms in applying the provisions of the Sixteenth Amendment and income tax laws enacted thereunder."

In Weiss v. Stearn, 265 U.S. 242, 44 S. Ct. 490, 492, 68 L.Ed. 1001, 33 A.L.R. 520, the Court said:

"Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form."

The case of Helvering v. F. & R. Lazarus & Co., supra, deals with a taxpayer who claimed depreciation upon property which he had formerly owned, but which he had later conveyed in trust, and upon which he had taken back a long term lease. The Commissioner disallowed a deduction for depreciation on the ground that the statutory right to depreciation follows legal title. The Board, however, concluded that the transaction was in reality a mortgage and allowed the deduction. The Circuit Court of Appeals affirmed. Commissioner

of Internal Revenue v. F. & R. Lazarus & Co., 6 Cir., 101 F.2d 728. So did the Supreme Court.

The case of Wood v. Rasquin, D.C., 21 F.Supp. 211, affirmed without opinion by 2 Cir., 97 F.2d 1023, is, we think, distinguishable. There was involved a *co-operative apartment* venture, in *corporate* form. The court held that the apartment owner could not deduct the tax imposed on his interest in the property. This conclusion was necessitated by reason of the fact that the corporation was listed on the assessment books as the owner, and the corporation paid the tax, and *deducted* it in making its corporate income tax return. The court pointed out those facts stating that the taxes were paid by the corporation and not by the "complainants," and that the corporation had already received the benefit of the deductions for the taxes paid.

■ Convinced as we are that the trust indenture and the lease were inoperative and that the taxes paid by Borland were paid by him as owner of the property, we conclude that the sums thus paid should be deducted from his income.

The order of the Board of Tax Appeals is reversed, with directions to proceed in accordance with the views here expressed.