## INCOME TAX LIABILITY AS BASED ON BOOK ACCOUNTS.

### Superior Court of Cincinnati.

MILLER ET AL. *v.* THE HOMESITE REALTY COMPANY, INC.

Decided, June 23, 1925.

*Taxation—Corporate Income Diverted from Corporate Purposes— And Paid to Unscrupulous Promoters—Becomes Subject to a Claim for Income Taxes against the Promoters and not against the Corporation—Use of a Corporation as a Vehicle for Fraud is Ground for Treating it as an Association of Individuals.*

1. In determining income tax liability book entries are evidential but not conclusive; and where book entries have been made a part of a scheme to defraud, by crediting a corporation with funds which were not in fact received by the corporation for the purpose of being made available for corporate uses, but which merely flowed through the corporation as through a conduit into the pockets of·fraudulent promoters, the entries relating to such receipts by the corporation may be disregarded.

2. A claim by the Government for income taxes, based upon such book entries, will not lie against the receiver of the corporation which has been thus wronged, but is good against the individual promoters of the fraudulent scheme, and the receiver will be directed to assist the Government in enforcing collection from said promoters by furnishing copies of books, records. and evidence in his possession and in such other ways as may be practicable.

*Robert P. Goldman,* Receiver and *H. H. Shafer,* attorney for receiver.

*A. Lee Beaty* and *Robert Kramer,* Assistant U. S. District Attorneys.

MARX, J.

The case before the court arises upon the application of the receiver for instructions as to the payment of the claim of the United States for taxes in the amount of $3,515.86, with interest. These taxes are claimed under the Income Tax Revenue Act of 1921, for the taxable period ending October 21, 1921. Upon the hearing of this application, the matter was presented on behalf of the United States by the district attorney who submitted in connection with his argument and the application of the receiver, photostatic copies of the income tax return; the reports of the findings of the income tax department relative to such returns; the proceedings before the income

tax unit and the committee on appeals and review in the revenue department with the understanding that the parties would abide by the conclusion of this court which has had jurisdiction of this case from its inception and is familiar with all of the facts.

In connection with those proceedings, the district attorney also submitted the findings and opinion of the internal revenue agent in charge and the opinion of the solicitor of internal revenue upon the appeal of the receiver from the finding of the income tax unit that the tax claim was due.

Upon appeal, the committee on review was of the same opinion, quoting Section 213 (a) of the 1918 and 1921 Revenue Law, defining gross income.

From the above opinions the crucial question seems to be whether the entries upon the books of the cash received from the sale of lots as income and the carrying of these accounts as accounts receivable is conclusive in so far as tax liability is concerned, or whether the actual facts may be inquired into and the book entries corrected to correspond therewith.

After a thorough examination of the federal decisions upon this point, we are convinced that the book entries although evidential are not conclusive, and that tax liability is to be determined in accordance with the actual facts, and that where the book entries are made as part of a scheme to defraud and credit the corporation with income which it did not in fact receive or which merely flowed through the corporation as if through a pipe line into the pockets of others, the same may be disregarded.

In *Holmes on Federal Taxes*, 6th Edition, (1925), the general rule is stated as follows: (page 489.)

"Real facts and not bookkeeping entries give rise to income. Books of account are no more than evidential; they are neither indispensible nor conclusive. A book value increase in the value of capital assets due to a reappraisal of property is not income. It has been stated by a court that the Government cannot base a claim for taxes on mere bookkeeping. * * * Neither the Government nor the taxpayer is bound by valuations entered on the books of the taxpayer."

The authorities fully support this rule. In *Doyle, Collector, v. Mitchell Brothers Company*, 247 U. S., 179, the Supreme Court holds that income must be based upon *gainful* returns from business operations and property and that;

"Whatever difficulty there may be about a precise and scientific definition of "income," it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; *conveying rather the idea of gain or increase arising from corporate activities.*"

These findings and opinions by the experienced officers of the United States revenue department have been carefully considered by the court, and have been given the weight which the knowledge and experience of such officers and lawyers in the administration of the law justly merit. There can be no question that it is the duty of the receiver to pay all just and legal claims of the United States for taxes and to give the same the priority required by Section 3466 Revised Statutes of the United States.

There is no dispute about the facts in this case which are well summarized in the opinion of the solicitor of internal revenue (recommendation No. 66). The Homesite Realty Company was a corporation brought into being by four unscrupulous and crooked promoters, as part of their scheme to defraud a number of poor working men and women of this city of large sums of money by selling them lots at greatly inflated prices by means of false representations. This scheme partially succeeded and at the time this court intervened by the appointment of a receiver, there had been taken from the pockets of these poor people for comparatively worthless farm land, $79,033.64, part of which was used to pay commissions and expenses and the balance to the extent of $65,365.25 was divided among the promoters all of whom have since been indicted and two of whom have been convicted of obtaining money by false pretenses. This money passed into the hands of these promoters by means of alleged dividends, alleged salaries, and finally by simply dividing the cash without even going through the formality of

204     SUPERIOR COURT OF CINCINNATI.

Miller v. Homesite. Realty Co. [Vol. 26 (N.S.)

depositing the same in the corporation account. The corporation thus became a mere conduit through which a large part of the money flowed from the hard earned savings of the defrauded wage-earners into the pockets of the promoters. As a necessary part of their crooked scheme to draw this money out of the corporation by means of dividends and salaries, it was necessary to enter the cash received from the sale of lots, as income upon the books of the. corporation although in fact the cash was not received by the corporation but by the promoters. Eighty-five hundred and sixty dollars did not even flow through the corporation. The balance which did flow through the corporation established a contingent liability against the corporation which should have been entered upon the books as a liability due the payers.

The Government does not dispute these facts, but bases its claim for an income upon the books as income received. This is the basis of the original report of the internal revenue agent in charge.

It would appear from that finding that the internal revenue agent did not feel that he had jurisdiction to go behind the book entries and based his finding exclusively upon the books. The inference from his finding is that if he had jurisdiction to inquire into the actual facts, he would have recommended an abatement of the full tax. The same conclusion was reached by the deputy commissioner (J. G. Bright) January 29, 1924, who says:

"Your are advised that an examination of the return as verified by an examination of the books of account and records shows that the income reported amounting to $15,199.51, and tax assessed of $5,515.86, is correct. Inasmuch as no additional information has been furnished showing net income improperly reported, no change in the tax assessed can be made. The claim (for abatement) will, therefore, be rejected."

The court distinguishes carefully between gross revenue and gross income, and concludes that the fact that the taxpayer had entered an increase of value upon its books did not make the same income, and said at page 187:

"Such books are no more than evidential being neither indispensable nor conclusive. *The decision must rest upon*

the actual facts, which in the present case are not in dispute."

In *Southern Pac. R. Co.* v. *Muenter*, (C. C. A. 9.) 260 Fed. Rep., 837, the court said:

"A .system of bookkeeping will not justify the Government in claiming taxes, nor will it justify the taxpayer in claiming exemption from taxation. *The facts must control."*

In *Forty Fort Coal Co.* v. *Kirkendall, Collector of Internal Revenue,* 233 Fed. Rep., 704, certain amounts which should have been charged to the depletion of corporate assets were carried on the books in a surplus account for two years and later corrected. The court held:

"The decisions under the Excise Tax Law and under the Income Tax Law are uniform to the effect that the Government cannot base a claim for taxes on mere bookkeeping. * * *"

The court found that this amount should have been charged to reserve and denied the Government's claim for taxes.

In *Baldwin Locomotive Works* v. *McCoach, Collector,* (C. C. A. 3.), 221 Fed. Rep., 59, a reappraisal of the property of the taxpayer showed an increase in value which was entered on the books. The Government claimed this increase in value entered upon the books was income but the court held:

"We agree with the district court that this increase of valuation was not income within the meaning of the statutes. * * * The only .thing done was to put upon the company's books an expression of expert opinion that certain property was worth a certain sum, and this can hardly be said to be income, or even gain, in any proper sense. *The company could not become either richer or poorer by making a few book entries* that merely recorded a new estimate of how much it was worth."

In *Douglas* v. *Edwards, Collector,* (C. C. A. 2.), 298 Fed. Rep., 229, the first syllabus reads:

"For purposes of the income tax, the rights of the parties can neither be established nor impaired by bookkeeping methods or by names given to various items; whether something is capital or income, and to what year dividends should be allocated, being dependent on the sub-

ject-matter and on the statute involved, when construed in the light of constitutional requirements."

Disregarding the book entries and looking at the true facts as we are required to do under the above decisions, it is clear that there was no taxable income or gain to the corporation as the language of the income act is construed by the Supreme Court of the United States. This finding is made in the final judgment and decree of the court, entered April 3, 1922, which reads upon this point as follows:

"The court further finds from the evidence that the Homesite Realty Company is a corporation organized under the laws of Ohio, and that its plan of operation was based upon fraudulent representations and through and by said false representations, the plaintiffs, Albert Miller and Martha Miller were induced to enter into the contract described and attached to the petition therein, for the purchase of certain lots, to-wit Lots N. 53-54 Section C in said the Homesite Realty Company's Subdivision, known as Madison Terrace Subdivision, and that they are entitled to rescind said contract.

The court further finds that said Albert Miller and Martha Miller paid on account of said contract the sum of $129, and are entitled to and have a valid claim against the receiver herein for said amount, together with interest from the 14th day of May, 1921.

The court further finds that said claim above stated and claims of other creditors in the aggregate will largely exceed all the tangible assets and property now in the hands of said receiver and that therefore said defendant corporation is insolvent.

*The court further finds that the money distributed and divided among the stockholders as dividends or otherwise of said corporation was illegally and wrongfully taken from said corporation, because there were not and could not be earnings to be divided because, of the fraud in the receipts of said moneys and the declaration of said dividends was void and of no force by reason of said fraud."*

The above judgment is conclusive upon the issue of fact. The time for appeal has expired, and no collateral attack upon the judgment can be entertained. It has been *judicially* determined that the corporation had no earnings or income, but was a mere channel through which money obtained by fraud flowed to those guilty of the fraud.

The corporate form was a pure subterfuge to cover their crime and to give it the formality of law, hoping thereby to escape personal liability. The court does not doubt that the guilty promoters kept proper books and had they been permitted to successfully complete their scheme of mulcting the public out of some two hundred to two hundred and fifty thousand dollars, they would cheerfully have caused the corporation to pay a tax on the false book entries. Under such circumstances of fraud, and where the corporation form is used as a subterfuge, it is well settled that the tax is chargeable against those who actually received the money rather than against the corporate channel through which it flowed. This is established in *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S., 71, in which the court said:

"It is true that the petitioner and its subsidiaries were distinct beings in contemplation of law, but the facts that they were related as parts of one enterprise, all owned by the petitioner, that the debts were all enterprise debts due to members, and that the dividends represented earnings that had been made in former years and that practically had been converted into capital, unite *to convince us that the transaction should be regarded as bookkeeping rather than as 'dividends declared and paid in the ordinary course by a corporation.'*"

In *Weiss, Collector* v. *Stearn*, (C. C. A. 6), 285 Fed. Rep., 689, the Court of Appeals for this circuit held:

"It is true that a new corporate being has intervened; but, where a corporate entity has been found to be a mere matter of form, it has been disregarded in similar transactions in respect to income taxation."

In Holmes on Federal Taxes, 6th Edition, 231, the following language is quoted with approval::

"If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, *the law will regard the corporation as an association of persons.*"

Following the declaration of the Supreme Court of the United States in *Weiss* v. *Stearn*, 265 U. S., 242, at page

254, that "questions of taxation must be determined by viewing what was *actually* done rather than the declared purpose of the participants; and when applying the provisions of the 16th Amendment and Income Laws, enacted thereunder, we must regard matters of substance and not mere form," we hold that the Homesite Realty Company was a mere corporate form through which money obtained by fraud passed to the guilty parties, and that although set up on the books of the corporation by such guilty parties under accounts receivable, such money represented no gain or income to the corporation, but was a liability. It necessarily follows that there was no taxable income received by the Homesite Realty Company and that the sums credited upon its books as income were in fact, received by the promoters of the fraud in this case. The books should, therefore, be corrected in accordance with the facts, and should show instead of a net income for the taxable period of $15,199.51, a liability and loss in excess of the amount allowed claimants which alone equal $17,432.-19, as shown by the report of the receiver as to claims filed and allowed, entered in this court December 5, 1922.

There is no question that the taxes assessed by the Government in this case against the corporate form used by the promoters is properly due and payable by said promoters personally in proportion to their participation in such income. The court, therefore, finds that the tax claimed by the Government is not due or payable by the receiver in this case, but is due and payable by the individual promoters.

Any other holding would enable the guilty parties to escape and would take the taxes claimed out of the pockets of the innocent victims of their fraud in addition to the amounts of which they have already been robbed.

For these reasons the receiver is instructed to disallow the income tax claim of the United States as against the Homesite Realty Company, but he is further instructed to assist the Government in the collection of said claim as against said promoters individually, bu furnishing copies of all books, records and evidence in his possession and to such other extent as may be practicable.