

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-6595
Re: Inheritance tax on one-
half of accumulated surplus
of a corporation when all
of such corporation's stock
was owned prior to, during
and after marriage by the
surviving spouse who trans-
acted personal business
through the corporation.

In your letter of August 25, 1945, you have re-
quested an opinion from this office relative to the above
subject.

The fact situation, as presented in your request,
is briefly as follows: Husband and wife married in June,
1936, at which time the husband owned all of the stock in
an incorporated oil operating company. Husband and wife
resided in Texas continuously until the death of the wife
on March 5, 1944, at which time the husband still owned
all of the above stock. The wife bequeathed all of her com-
munity estate to the husband. During the marriage a sub-
stantial sum was added to the surplus of the corporation.
The husband transacted his personal business through the
corporation, borrowing funds from it when needed and reduc-
ing the resulting accounts receivable through a method not
known or stated. It is known that a number of investments
of substantial size were made by the husband during coverture
and it appears that these investments made their way into the
assets of the corporation prior to the wife's death. It is
contended that no community estate was accumulated during
coverture.

Whether any part of the above mentioned additions
to surplus accruing during the marriage are subject to in-
heritance taxes under the Texas statutes turns on a deter-
mination of the nature and ownership of the property which
they represent.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, page 2

Necessarily, an inquiry into the nature of this property must begin with the presumption that (pursuant to Article 4619, Vernon's Annotated Civil Statutes) the property represented by the ownership of the corporation is community. Article 4619, Vernon's Annotated Civil Statutes, is in part quoted:

"Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. ..."

See also, Speer's Law of Marital Relations in Texas, Section 298, page 369.

Since it is contended that no community property was accumulated during the marriage, it is assumed that the contrary to the above presumption will be submitted on the basis either (a) that the stock is the separate property of the husband as it was owned by him prior to marriage and that the additions to surplus represent no more than an enhancement in the value of the stock and remain, therefore, separate property; or (b) that the additions to surplus were not in the possession of the husband at the time the marriage was dissolved by the death of the wife since no distribution, either through dividends or otherwise, had been made.

Before passing to the more peculiar aspects of the instant case, some well settled principles pertaining to the determination of property as community or separate in Texas which are here applicable should be noted. It may be stated as a general rule that profits from a business in which separate property is invested become community property (Hardee v. Vincent, 147 S.W. (2d) 1072; Gist v. Tsesmelis, 153 S.W. (2d) 277; Bullock v. Engbert, 125 S.W. (2d) 663; Logan v. Logan, 112 S.W. (2d) 515; Brittian v. O'Banion, 56 S.W. (2d) 249; Schwethelm v. Schwethelm, 1 S.W. (2d) 911) as well as profits from investments or reinvestments of separate property (Brand v. Brand, 102 S.W. (2d) 310; A. B. Richards Medicine Co. v. Jenning, 283 S.W. 296; Schwethelm

Honorable George H. Sheppard, page 3

v. Schwethelm, supra; Commissioner of Internal Revenue v. Wilson, 76 F. (2d) 766; Speer's Law of Marital Relations in Texas, Section 367, page 447, and cases cited). One test as to an increase of separate property becoming a part of the community is the severability of the increase from the original (Speer's Law of Marital Relations in Texas, Section 360, page 440). Another applicable rule is that generally all property and pecuniary rights obtained by either spouse during marriage through the toil, talent, energy, thrift or industry of either becomes community property (Logan v. Logan, supra; 31 Corpus Juris, Section 1095, page 20; Speer's Law of Marital Relations in Texas, Section 360, page 441). However, an increase in separate property which is no more than an enhancement of its value resulting from fortuitous causes such as natural growth or the fluctuations of the market remains a part of the separate estate (Stringfellow v. Sorrels, 18 S.W. 689; Oglesby v. Potts, 40 S.W. (2d) 815; 41 Corpus Juris Secundum, Section 479b, page 1015; Speer's Law of Marital Relations in Texas, Section 360, page 440), and the test of severability above noted is an important consideration here.

From the above, it seems clear that were the oil company in this case a proprietorship of the husband, the earnings from the business would be community property. Not only would they fall into community by reason of being profits from a business or from investments, but they would also stand the above mentioned tests of severability from original property and of having been produced by the toil, talent, or industry of the husband.

But the differentiating factor in the instant case is that the husband conducted his business affairs through the instrumentality of a corporation. Ordinarily, dividends paid to either spouse on account of stock separately owned are community property, but an increase in the value of such stock through accumulated surplus remains separate property even though the husband is an officer of the corporation and the increase was due largely to his toil, talent, or industry. It is said that if the husband is paid a salary for his services by the corporation, this reimburses the community for his time and labor, and although the equities of the community's claim in a corporation of a "family character" are strong, they should not be invoked to defeat an election to preserve the separate form of an

Honorable George H. Sheppard, page 4

investment (Scofield v. Weiss, 131 P. (2d) 631; Beals v. Fontenot, 111 P. (2d) 956; In Re Herberts Estate, 14 P. (2d) 6; 41 Corpus Juris Secundum, Section 479b, page 1015).

Generally then, where the corporate stock is the separate property of one of the spouses, the community has no claim on or interest in the additions to or the accumulations of corporate surplus accruing during marriage, unless distribution thereof is made. But in the instant case (precisely in point with which no precedent has been found) there are certain facts which carry the inquiry further. The husband owned all of the stock in this corporation and conducted virtually all of his business affairs through it. In substance and fact the corporation was the husband's instrumentality for the conduct of his business affairs or a method of operation therefor. Indeed, it might even be viewed as no more than a method of accounting.

Controlling, therefore, of the several questions presented by the husband's operation through a corporation, is whether the legal fiction that a corporation is an entity or legal person existing separately and apart from its members or stockholders will obtain under the facts herein.

While the recognition of a corporation as an entity separate and distinct from the members who compose it is fundamental, it is a legal fiction and is not a sacrosanct principle inevitably followed when the fiction is opposed to the facts. Practically, it is necessary to disregard the fiction in order to cope with some abuses of the corporate method of conducting business. (10 Texas Juris, Section 45, pages 639, 640, 641; 13 American Juris., Section 7, pages 160, 161; 18 Corpus Juris Secundum, Section 6, pages 376, 377) The larger principles of justice must not be obscured by the corporate veil. A fiction should not prevail over fact.

The ownership of all of a corporation's stock by one man is not prohibited in Texas, but when a stockholder is the sole owner (or even practically the sole owner) and treats the corporation as his alter ego, the corporate entity should be disregarded if its use is repugnant to broader principles or provisions of law. (Stapcke v. Roulledge, 241 S.W. 994; Home Inv. Co. v. Strange, 152 S.W. 510; Bond Reed Hdw. Co. v. Walsah, 193 S.W. 1148; Gamer Paper Co. v. Tuscany, 264 S.W. 132; Merrill v. Timmons, 140 S.W. (2d) 482; 10 Texas Juris., Section 50, pages 651, 652, 653; also

Honorable George H. Sheppard, page 5

In Re Chas. K. Horton, Inc., 22 Fed. Supp., 906) In Merrill v. Timmons, the court (Court of Civil Appeals, Galveston) said:

"... It is well settled in such instances that, to prevent injustice, our courts will look through the mere corporate form of things to the reality, and hold one who is in that manner and form merely carrying on transactions for and in behalf of himself personally; ..."

In Re Chas. K. Horton, Inc., the language of the court is particularly applicable here:

"It must be conceded that a corporation entity will not be ignored because one individual owns all of the stock. Courts exercise great caution in ignoring the artificial entity and such ignoring only comes if and when the proof substantiates the thought, and drives any other conclusion from the mind, that the entity is in fact the tool or mere agency of the owner of the stock. Centmont Corp. v. Marsch, 1 Cir., 68 F. 2d 460; In re Kentucky Wagon, D.C., 3 F. Supp. 958; Id., 6 Circ., 83 F. 2d 756; Woodbury v. Pickering Lbr. Co., D.C., 10 F. Supp. 761."

There is a growing tendency upon the parts of courts to disregard the corporate entity and to treat the stockholders as an association of individuals when the interest of justice are thereby served. (Gameu Paper Co. v. Tuscany, 264 S.W. 132; Metropolitan Holding Co. v. Snyder, 76 F. (2d) 263; Law v. McLaughlin, 2 Fed. Supp. 601; 5 Texas Law Review 77; 18 Corpus Juris Secundum, Section 6, pages 376, 377 and footnotes and cases cited; 13 American Juris., Section 7, and cases cited) In Gamer Paper Co. v. Tuscany, other authorities were quoted as follows:

"As said in Re Rieger, Kapner & Altmark (D.C.) 157 Fed. 609:

"'The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties, or to circumvent fraud.'

Honorable George H. Sheppard, page 6

"The United States Supreme Court expressed the same thought in McCaskill v. U.S., 216 U.S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590:

"'A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it. *** Such cases as these are becoming common and the courts are becoming more and more inclined to ignore the corporate existence when necessary to circumvent fraud.'

"Lord Mansfield, in Johnson v. Smith, 2 Burr. 962, said:

"'The court would not endure that a mere form or fiction of law, introduced for the sake of justice, should work a wrong contrary to the real truth and substance of the thing.'

"....

"And in St. L. & S. F. Ry. Co. v. Hale (Tex. Civ. App.) 153 S.W. 411:

"'When one corporation makes use of another as its instrument through which to perform its business, the principal corporation is really represented by the agents of the subcorporation, and its liability is just the same as if the principal corporation had done the business in its own name.'

"And in Bond-Reed Hdw. Co. v. Walsh (Tex. Civ. App.) 181 S.W. 248:

"'The testimony showed that the corporations were but the outward manifestations of Geo. H. Bond, owned and controlled by him. He was the inspiration and soul of the corporations and the court properly rendered judgment against him.'"

And in Law v. McLaughlin, the court said:

"... The tendency of the Supreme Court of the United States to disregard changes in form

Honorable George H. Sheppard, page 7

> of ownership without change in substance in cases
> of corporate reorganization is declared in Weiss
> v. Stearn, 265 U.S. 243, 44 S. Ct. 490, 68 L.
> Ed. 1001, 33 A.L.R. 520, and Eisner v. Macomber,
> 252 U.S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9
> A.L.R. 1570. The same tendency toward disre-
> garding the corporate fiction is shown in other
> situations where all of the stock of a corpora-
> tion is owned by one person or corporation.
> Davis v. Alexander, 269 U.S. 114, 46 S. Ct. 34,
> 70 L. Ed. 186; U.S. v. Reading Co., 253 U.S.
> 26, 40 S. Ct. 426, 64 L. Ed. 760; Wenban Estate
> v. Hewlett, 193 Cal. 675, 227 P. 723."

Among the circumstances when this will be done are
included those situations in which the use of the corporate
fiction operates to circumvent a statute, prejudice the rights
of third parties, or result in an evasion or existing legal
obligation. (Continental Supply Co. v. Forrest E. Gilmore
Co., 55 S.W. (2d) 622; 5 Texas Law Review 77, and cases cited
to text) The following is quoted from the case cited (55 S.W.
(2d) 622):

> "Upon ascertainment of the facts, the courts
> will disregard the fiction of corporate entity
> where the fiction (1) is used as a means of per-
> petrating fraud; (2) where a corporation is or-
> ganized and operated as a mere tool or business
> conduit of another corporation; (3) where the
> corporate fiction is resorted to as a means of
> evading an existing legal obligation; (4) where
> the corporate fiction is employed to achieve or
> perpetrate monopoly; (5) where the corporate
> fiction is used to circumvent a statute; and
> (6) where the corporate fiction is relied upon
> as a protection of crime or to justify wrong."

The reasons for disregarding the corporate entity
in the instant case are compelling. To recognize it would
give effect to a circumvention of Article 4619, Revised Civil
Statutes of Texas, as amended. The facts that (1) the surplus
was produced by the toil, talent, or industry of the husband,
(2) the surplus is severable from the original value of the
stock, (3) the increase otherwise fulfills all the require-
ments of community property "acquired during marriage" pur-
suant to said statute, and (4) the husband's control of it is

Honorable George H. Sheppard, page 8

tantamount to ownership and its incidental rights, notwithstanding, the recognition of the corporate fiction would nullify the provisions of the said article. And it follows that such in turn would result in a circumvention of Article 7117, Revised Civil Statutes of Texas, as amended.

More violence would be done to the community property system of Texas by recognition of a corporation under such circumstances than by upholding the validity of contracts altering the legal orders of descent. (See Speer's Law of Marital Rights in Texas, Section 56, page 67, and Section 59, page 70.) It would be an invitation to anyone desiring to defeat the rights of his wife and her heirs and also the inheritance tax statutes, to incorporate prior to marriage and operate through an alter ego. It would operate to create a right of election with regard to property coming into the community.

It must be concluded, therefore, that the corporate entity in the present case should be disregarded and the additions to surplus or the profits accruing or earned during the marriage should be held community property. At the time of her death the wife had an undivided one-half interest therein and this interest passed to the husband.

Accordingly, you are advised that it is the opinion of this office that one-half of the additions to surplus accruing during marriage are subject to an inheritance tax under the Inheritance Tax Laws of Texas.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Jackson Littleton
Jackson Littleton
Assistant

JL:db


APPROVED OPINION COMMITTEE BY BWB CHAIRMAN