**METROPOLITAN COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2249 (At Dayton).**

United States District Court
S. D. Ohio, W. D.

June 24, 1959.

Robert F. Young of Harshman, Young, Colvin & Alexander, Dayton, Ohio, for Metropolitan Company.

Robert W. Kernan, Tax Div., U. S. Dept. of Justice, Hugh K. Martin, U. S. Atty., and H. Donald Hawkins, Asst. U.S. Atty., S. D. Ohio, Dayton, Ohio, for the United States.

CECIL, District Judge.

This case was tried and submitted to the Court upon the pleadings, the evidence, and oral arguments of counsel. Upon consideration whereof, the Court makes the following Finding of Fact:

1. Plaintiff, the Metropolitan Company, is a corporation organized and existing under and by virtue of the laws of the State of Ohio, with its principal office in the City of Dayton, Ohio.

2. On or about June 11, 1954, plaintiff filed its Federal Income Tax return for its taxable year ended January 31, 1954, with the District Director of Internal Revenue, at Cincinnati, Ohio, and paid the amount of tax due according to such return so filed.

3. Under date of February 24, 1956, the District Director of Internal Revenue, at Cincinnati, Ohio, mailed to plaintiff notice of a proposed deficiency in Federal Income Tax in the amount of

$15,800.78 for plaintiff's taxable year ended January 31, 1954, to which proposed assessment protest was duly filed by plaintiff, but despite such protest the Commissioner of Internal Revenue determined that the alleged deficiency existed, and so notified plaintiff by letter dated August 31, 1956.

4. On December 24, 1956, assessment of the alleged deficiency was made against plaintiff, and pursuant to such assessment plaintiff, on January 7, 1957, paid to the District Director of Internal Revenue, at Cincinnati, Ohio, the sum of $18,352.28, this amount including the alleged deficiency of $15,800.78 in Federal Income Tax for plaintiff's taxable year ended January 31, 1954, together with interest thereon in the amount of $2,-551.50.

5. On May 7, 1957, plaintiff filed with the District Director of Internal Revenue, at Cincinnati, Ohio, its claim for refund in the amount of $18,352.28, of which $15,800.78 was claimed refundable as the alleged deficiency theretofore paid, and $2,551.50 was claimed refundable as the interest theretofore paid on the alleged deficiency, or such other amount as should be determined to be legally refundable, together with interest.

6. On February 27, 1958, the District Director of Internal Revenue, at Cincinnati, Ohio, mailed to plaintiff, by registered mail, notice of disallowance in full of plaintiff's said claim for refund.

7. Such alleged deficiency in Federal Income Tax resulted from the disallowance of two deductions from gross income taken by plaintiff in computing its net taxable income in its return filed for its taxable year ended January 31, 1954, to-wit: (a) $30,000 paid during such taxable year to one David H. Margolis by plaintiff pursuant to contract entered into between plaintiff and the said David H. Margolis January 30, 1953, which amount so paid was deducted by plaintiff as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A), now Section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162(a); and (b) $1,274.13 in real estate taxes accrued by plaintiff during its taxable year ended January 31, 1954, and deducted by plaintiff as an accrual of an ordinary and necessary business expense under the above-mentioned Sections of the Internal Revenue Code.

8. Plaintiff, in its fiscal year ended January 31, 1954, paid to David H. Margolis the sum of $30,000, which payment was made pursuant to a contract entered into between plaintiff and the said David H. Margolis on January 30, 1953. By the terms of this contract, plaintiff was obligated to pay to David H. Margolis the sum of $30,000 per year for six years beginning February 1, 1953, and ending January 31, 1959.

9. In 1952, there existed some dissension between the said David H. Margolis and other officers and management of plaintiff with regard to company policies, management, and conduct of plaintiff's business, which threatened to affect adversely the operation of such business.

10. In the latter part of 1952, the said David H. Margolis proposed to plaintiff a termination of his business connection with plaintiff.

11. At the time such negotiations commenced, there existed a contract between plaintiff and David H. Margolis entered into between them under date of May 9, 1945, as amended January 9, 1947, for a term of ten years ending January 31, 1955, which contract at the time the negotiations herein referred to commenced had an unexpired remaining term of more than two years. (Plaintiff's Exhs. 1 and 2.) The disability provisions of said contract, as amended, became effective beginning February 1, 1950, pursuant to resolution of the Board of Directors of plaintiff at meeting thereof held May 6, 1950. (Plaintiff's Exh. 12.)

12. At the time such negotiations commenced, David H. Margolis owned 10 shares of the 40,000 issued and outstanding common capital stock of plaintiff, and

the immediate family of David H. Margolis, to-wit, his wife and children, owned an aggregate of 300 shares of the 900 issued and outstanding preferred shares of plaintiff, and 13,323⅓ shares of issued and outstanding common shares of plaintiff, the total of which shares of stock in plaintiff owned by David H. Margolis and his family comprising one-third of all of the issued and outstanding preferred shares and one-third of all of the issued and outstanding common shares of plaintiff.

13. From the inception and throughout such negotiations, at all times, there were these two matters involved: (1) The termination of the existing personal contract with David H. Margolis for the unexpired term thereof; and (2) the purchase of the stock of plaintiff owned by David H. Margolis and his family.

14. In the negotiations with respect to the sale of such stock interest in plaintiff owned by David H. Margolis and his family, David H. Margolis was acting as Agent for the members of his family with respect to the shares of stock then owned by them.

15. From the inception and throughout all such negotiations, these two matters were negotiated separately, and as wholly separate and distinct issues. This fact is established by a preponderance of all of the evidence in the case. The deposition of David H. Margolis is replete throughout with references to his contract and what he claimed to be entitled to receive under it. His own memorandum in evidence indicate there always was a claim of his right to receive payments under such contract of May 9, 1945, for the unexpired term thereof. The testimony of Mr. J. Edw. Wasserman, an attorney at the Bar of this Court, and a lawyer of high standing, who represented David H. Margolis in such negotiations, clearly substantiates this finding by the Court, and the credibility of his testimony together with all other evidence establishes this fact by a preponderance thereof. The preponderance of all of the evidence establishes the fact that throughout such negotiations, at all times, it was the intent of the parties involved to negotiate separately with respect to these two matters, and that all that was done in such negotiations was consistent with and conformed to this intent.

16. From the inception and throughout such negotiations, the current volume of net sales of plaintiff, and its anticipated volume of net sales for the remainder of the unexpired term of the then existing contract with David H. Margolis was such that both parties could reasonably and did anticipate that there would become due and payable by plaintiff to David H. Margolis under the terms of such contract a sum of $75,000 per year for each of the remaining years of the unexpired term of such contract ending January 31, 1955.

17. The purchase and sale price of the stock interests of David H. Margolis and his family, in the aggregate amount of $321,000, as a result of protracted negotiations and offers and counter-offers with respect thereto, was a fair price for such stock.

18. Book value of such stock so purchased, taking into consideration the earnings and dividends paid thereon in the past and anticipated as to the future, and the fact that the stock so sold was a minority interest in a closely held corporation without readily available public market, was not determinative of a fair market value for such stock, and was not the basis for the purchase and sale price of such stock as finally agreed upon in negotiations with respect thereto.

19. The contract between the plaintiff and David H. Margolis entered into between them under date of January 30, 1953, and payments made by plaintiff pursuant to such contract, were not in any sense any part of the purchase price of the stock purchased by plaintiff from David H. Margolis and the members of his family.

20. The contract between plaintiff and David H. Margolis under date of January 30, 1953, pursuant to which

plaintiff was obligated to pay to David H. Margolis the sum of $30,000 per year for the six-year term of such contract (Plaintiff's Exh. 6), provided for three things: (1) Cancellation of his then existing contract of employment for the remaining unexpired two-year term thereof, constituting liability to plaintiff of $150,000, payable over such two years; (2) employment of David H. Margolis in a consultative capacity of a limited and nebulous nature to the extent only that such services might be desired by plaintiff, and subject to determination by David H. Margolis in his sole discretion as to his physical ability to perform such services by reason of the condition of his health; and (3) a covenant on the part of David H. Margolis not to engage in any competitive business with that of plaintiff within a specified and reasonable radius of 50 miles from the City of Dayton, Ohio.

21. The contract provision for termination of the then existing unexpired contract with David H. Margolis relieved plaintiff of an obligation for payment to him of $150,000 in two years, and in lieu thereof provided a payment to him of $180,000 over a period of six years at $30,000 per year. $150,000 in two years, with deferred payments at fixed periods, with interest, would virtually consume the entire $180,000, payable to David H. Margolis by plaintiff under the contract in question. This, alone, constituted a substantial part of the consideration for the payments agreed to be made to David H. Margolis pursuant to such contract. The spreading of such obligation over a period of six years instead of two years was of further substantial benefit to the plaintiff in relieving it of restrictions on its cash working capital that would otherwise be imposed upon it by cash payments of $75,000 each year for the remaining two years of plaintiff's previously existing contract, thereby making available to plaintiff additional cash working capital for investment in merchandise inventory for sales expansion purposes and other business requirements. This was also of substantial benefit to the business operations of plaintiff and is found by the Court to be a substantial and valuable consideration received by plaintiff for the payment agreed to be made by it pursuant to such contract.

22. The non-competitive covenants of David H. Margolis included in such contract are found by the Court to be a vital part thereof, and of substantial value to plaintiff and a substantial part of the consideration received by plaintiff for its obligation for payments thereunder. With his name and reputation, and ability as a merchandiser, as disclosed by the evidence in this case, David H. Margolis might, without regard to the state of his health, although the evidence discloses that he was not in good health at the time the contract was entered into, engage in a business competitive with that of plaintiff, to the detriment of plaintiff's business, without very much personal activity on his part.

23. No actual services of David H. Margolis were requested by plaintiff, nor were actual services rendered by him in plaintiff's fiscal year in question. Rendition of any actual services by David H. Margolis under the contract in question did not constitute any substantial part of the consideration for such contract and payments pursuant thereto. Rendition of services only to an extent reasonably requested by officers of plaintiff, and subject to determination by David H. Margolis in his sole discretion as to whether he was physically able to perform any such services, constitutes a provision so nebulous as to be of little or no real value or consideration to plaintiff. Such engagement of David H. Margolis was only incidental and precautionary, so far as plaintiff was concerned, as compared with the substantial benefits to plaintiff resulting from termination of the then existing contract with David H. Margolis and his non-competitive covenant. In any event, such services were available if desired, subject to discretionary determination of David H. Margolis as to his health, and that is all that part of the contract provided for.

Further, the essential purpose of the form of such agreement, insofar as it related to possible consultative services to be performed, was to place the parties in a position to present to the public generally, and to plaintiff's customers, many of whom were personal friends of the respective parties involved, an appearance of unity and lack of dissension between the parties involved, so as to overcome the threatened adverse effect on plaintiff's sales and business which would otherwise result from criticism of one party or the other by the respective friends of each.

24. Either the cancellation of the existing contract of David H. Margolis for the unexpired term thereof, or the covenant on his part not to engage in business competitive with that of plaintiff, alone, and in any event together, constituted reasonable and adequate consideration for the obligation of plaintiff for payment to David H. Margolis pursuant to such contract.

25. The payment of $30,000 to David H. Margolis by plaintiff with respect to its fiscal year ended January 31, 1954, pursuant to such contract with him herein referred to, was an ordinary and necessary business expense of plaintiff for such taxable year.

26. With respect to the accrual of real estate taxes in the amount of $1,274.13 and deduction of such accrual accordingly from gross income of plaintiff for its fiscal year ended January 31, 1954, in determination of Federal Income Tax liability of plaintiff for such fiscal year, the Court finds:

(a) That such real estate tax so accrued was payable by plaintiff under the terms of its lease of the real estate subject to such tax assessment under the laws of the State of Ohio;

(b) That such tax payment became an obligation of plaintiff, as lessee, as of January 1, 1954, pursuant to Section 5719.01 of the Revised Code of Ohio, as amended October 13, 1953;

(c) That the terms of the lease in question were consistently interpreted by the parties thereto, throughout the term thereof, as obligating lessee for payment of real estate taxes on the leased premises as of tax lien date;

(d) That the accrual of such tax payment obligation as of its lien assessment date January 1, 1954, was consistent with the accounting method uniformly used by plaintiff throughout the term of the lease involved, and that such was in accord with sound and accepted accounting practice.

(e) That such item of real estate tax so accrued by taxpayer constituted ordinary and necessary business expense of plaintiff for such fiscal year.

Conclusions of Law

1. This is an action of a civil nature to recover the sum of $18,352.28, plus interest at six percent from January 7, 1957, for Federal Income Taxes and interest erroneously and illegally assessed and collected.

2. The Court has jurisdiction over the parties to this action.

3. The Court has jurisdiction over the subject matter of this action, under Title 28, Section 1346(a) (1) of the United States Code.

4. The contract between David H. Margolis and plaintiff, under date of January 30, 1953, was a valid and enforcible contract.

5. The incidence of taxation depends upon the substance and not the form of the transaction. Weiss v. Stearn, 1924, 265 U.S. 242, 254, 44 S.Ct. 490, 68 L.Ed. 1001, 1005; Cleveland Allerton Hotel, Inc. v. Commissioner, 6 Cir., 1948, 166 F.2d 805.

6. Payment of obligations undertaken in consideration of relief from a burdensome contract is deductible as an ordinary and necessary business expense. The Stuart Co., 9 T.C.M., 585, 590, affirmed per curiam, 9 Cir., 1950, 195 F.2d 176; Helvering v. Community Bond

& Mortgage Corp., 2 Cir., 1935, 74 F.2d 727, affirmed 27 B.T.A. 480.

7. Consideration paid for the covenant not to compete is amortizable and deductible over the term of such covenant. Christensen Machine Co., (1929,) 18 B.T.A. 256.

8. Each and all of the considerations received by plaintiff for its obligations to pay to David H. Margolis $30,000 per year for six years under its contract with him, under date of January 31, 1953, constitute ordinary and necessary expenses incurred by taxpayer in the conduct of its business within the meaning of Section 23(a) (1) (A) of the Internal Revenue Code of 1939, now Section 162 (a) of the Internal Revenue Code of 1954.

9. No allocation of payments made pursuant to such contract is necessary where each and all of the considerations received by plaintiff under all of the terms of the contract are deductible as ordinary and necessary expenses within the meaning of Section 23(a) (1) (A) of the Internal Revenue Code.

10. Real estate taxes accrued by plaintiff and deducted on its Federal Income Tax return for its fiscal year ended January 31, 1954, became a lien on the premises, the subject of plaintiff's leasehold interest thereon, January 1, 1954, pursuant to Section 5719.01 of the Revised Code of Ohio, as amended October 13, 1953, and became an obligation of plaintiff for payment thereof under the terms of its lease agreement as of lien assessment date, and were properly deductible by plaintiff in computation of its Federal Income Tax liability for such fiscal year. Such deduction was in accordance with provisions of Rev.Rul. 55-152, 1955 CB-1, 67.

11. Plaintiff is entitled to recover from the United States of America the sum of $18,352.28, and interest thereon, erroneously and illegally assessed and wrongfully collected from plaintiff, together with interest on said sum from January 7, 1957, at the rate of six percent per year, and costs of this action.