Estelle Wyler, Inc. v. Commissioner. Estelle Wyler v. Commissioner.
Estelle Wyler, Inc. v. Commissioner
Docket Nos. 2222-65, 2223-65.
United States Tax Court
T.C. Memo 1967-147; 1967 Tax Ct. Memo LEXIS 113; 26 T.C.M. (CCH) 678; T.C.M. (RIA) 67147; July 7, 1967
*113 Held, (1) respondent did not err in determining that the $40,000 paid by Terminal Barber Shops, Inc., pursuant to the agreement entered into with petitioner Estelle Wyler, Inc., constituted long-term capital gain income to the petitioner; and (2) respondent erred in determining that petitioner Estelle Wyler received a constructive dividend of $30,000 from Estelle Wyler, Inc. Nathan John Willner, for the petitioners. John B. Murray, Jr., and William T. Holloran, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: In these consolidated proceedings respondent determined deficiencies in income tax as follows: Docket No.
Taxable Year
Deficiency
2222-65
F.Y. 9-30-1960
$10,000.00
2223-65
Calendar 1960
21,320.33
Many errors were assigned but only two questions remain for our determination. They are: (1) Did Estelle Wyler, Inc., in its taxable year receive long-term capital gain in the amount of $40,000 from the sale of a one-half interest in its assets pursuant to the formation of a joint venture with another corporation? (2) Did Estelle Wyler in her taxable year receive a constructive dividend in *114 the amount of $30,000 from Estelle Wyler, Inc.? Findings of Fact The stipulated facts are found as stipulated. Petitioner Estelle Wyler, Inc., hereinafter sometimes referred to as Wyler, Inc., was incorporated under the laws of the State of New York on September 25, 1937, for the purpose of operating and carrying on the business of a women's beauty parlor in New York City where it maintained a place of business on the date when the petition in this proceeding was filed. Petitioner Estelle Wyler, hereinafter sometimes referred to as Estelle, is an individual who resided in New York, N. Y., on the date when the petition in this proceeding was filed. Wyler, Inc., was on the accrual basis method of reporting income and filed its corporate Federal income tax return for the fiscal year ending September 30, 1960, on December 15, 1960, with the district director of internal revenue, Manhattan District, New York, reporting a net loss for the year of $14,228.01. Thereafter, on December 22, 1960, a Small Business Corporation Return of Income (Form 1120-S) was filed with the same district director by Wyler, Inc., for the same taxable year, reporting the same net loss of $14,228.01. *115 Estelle was on the cash basis method of accounting and filed her individual income tax return for the calendar year 1960 with the district director of internal revenue, Manhattan District, New York, reporting a taxable income (loss) of ($6,168.31). From September 29, 1937, until on or about March 12, 1960, the capital stock of Wyler, Inc., was owned equally by Estelle and one Harriet Kraus Nathanson, hereinafter sometimes referred to as Harriet. Estelle was president of Wyler, Inc., and Harriet was secretary-treasurer. The deficiency notices in these proceedings were mailed on or about January 29, 1965. In a statement attached to the deficiency notice in the case of Wyler, Inc., the respondent made three adjustments to income as follows: Taxable income or (loss)
as disclosed by return
($14,228.01) Unallowable deductions and additional income: (a) Sale of partnership
interest
$40,000.00
(b) Depreciation
2,474.77
(c) Cost of goods sold
2,000.00
44,474.77
Taxable income as cor-
rected
$30,246.76
In its petition Wyler, Inc., assigned as error all of the above adjustments. At the hearing, counsel for petitioner conceded its assignment *116 as to adjustment (b) and in his brief respondent conceded error as to adjustment (c). In the statement attached to the deficiency notice the respondent explained adjustment (a) (Issue (1), supra) as follows: (a) It is determined that the $40,000.00 paid by Terminal Barber Shops, Inc., pursuant to the contract entered into with Estelle Wyler, Inc., constitutes capital gain income which is being added to income of Estelle Wyler, Inc. In the same statement the respondent computed the deficiency of $10,000 as follows: COMPUTATION OF ALTERNATIVE TAX
Corrected taxable income
$30,246.76
Less: Net long-term capital gain reduced by net
short-term capital loss
40,000.00
Balance
None
Tax on amount on balance
None
Partial tax
None
Add: 25% of $40,000.00
$10,000.00
Alternative tax
10,000.00
COMPUTATION OF INCOME TAX
Taxable income as corrected
$30,246.76
Tax on $30,246.76 (52% less $5,500.00)
10,228.32
Alternative tax
10,000.00
Income tax liability as corrected
10,000.00
Income tax liability disclosed by return
None
Deficiency
$10,000.00
In a statement attached to the deficiency notice in the case of Estelle Wyler the respondent made seven adjustments *117 to income (loss) as follows: Taxable income as disclosed by return
($ 6,168.31)
Unallowable deductions and additional income: (a) Dividends received
$30,000.00
(b) Subchapter S loss
14,228.01
(c) Salary refund
2,725.00
(d) Travel and entertainment
1,640.76
(e) Legal expenses
1,250.00
(f) Medical expenses
400.00
50,243.77
Total
$44,075.46
Nontaxable income and additional deductions: (g) Dividend exclusion
50.00
Taxable income as corrected
$44,025.46
In her petition, Estelle assigned as error adjustments (a) to (f), inclusive. At the hearing, counsel for petitioner conceded its assignments as to adjustments (b) to (f), inclusive. In the statement attached to the deficiency notice the respondent explained adjustment (a) (Issue (2), supra) as follows: (a) It is determined that the $30,000.00 paid to Harriet Kraus Nathanson was paid on your behalf and constitutes a taxable dividend to you from Estelle Wyler, Inc. A written agreement was entered into on March 1, 1960, between Terminal Barber Shops, Inc., hereinafter sometimes referred to as Terminal, Wyler, Inc., and Estelle. The material provisions of this agreement are as follows: *118 WHEREAS, Wyler Inc. is presently engaged in the business of operating and managing a beauty salon; and WHEREAS, Wyler Inc. and Terminal desire to form a joint venture by the establishment of the Estelle Wyler Beauty Salon (hereinafter called the "Venture") and to provide for the control of said Venture and to create certain reciprocal rights and obligations in reference thereto; NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the parties hereto agree as follows: * * *
2. Wyler Inc. and Terminal hereby form a joint venture to operate a beauty salon on the fifth floor of 724 Fifth Avenue, New York, New York, under the name of Estelle Wyler Beauty Salon, a division of Terminal Barber Shops, Inc. 3. Wyler Inc. by this Agreement transfers to the joint venture all of its assets, including, but not limited to, the leasehold and good will thereof, together with all the merchandise, fixtures and equipment. * * *
4. In return for a half interest in the Venture, Terminal agrees to pay to Wyler Inc. upon the execution of this Agreement, in the form of a certified or cashier's check, the sum of Forty Thousand ($40,000) Dollars, *119 receipt of which is hereby acknowledged. This sum shall be allocated as follows: Fixtures and Equipment
$ 4,000
Good Will
2,000
Leasehold and leasehold im-
provements
34,000
Total
$40,000 * * *
7. Estelle will be employed by the Venture as the manager of the Salon, but also work as a beautician on a full-time basis, exclusively for the Venture. Terminal will administer the payroll, personnel records, bookkeeping and accounting of the Venture and furnish the regular and usual management functions, provided, however, that general policy decisions and transactions outside the usual course of business, such as, but not limited to, change of prices, personnel, location or changes affecting the status of the Venture's lease, must be concurred in by Wyler Inc. * * *
9. Wyler Inc. and Terminal shall share equally in any and all profits of the Venture and shall be entitled to an annual distribution of said profits promptly after the close of each calendar or fiscal year if one is adopted. Any losses incurred by the Venture shall accumulate and be charged against future profits before any distribution to the parties. * * *
12. Estelle represents and *120 warrants that Wyler Inc. is a valid and subsisting corporation organized under the laws of the State of New York; that Estelle is the holder of all of the issued and outstanding stock of said corporation, with the right to transfer all of the assets thereof. * * *
18. Estelle and Wyler Inc. are this day executing an agreement with Harriet Kraus Nathanson (hereinafter referred to as "Kraus") under which Estelle is purchasing the shares of Wyler Inc. previously held by Kraus. * * * On or about March 12, 1960, Harriet wrote a letter to Estelle which became the agreement mentioned in paragraph 18 of the above-mentioned agreement of March 1, 1960. The material provisions of this agreement are as follows: Dear Miss Wyler: The following is our agreement: 1. I hereby sell, assign and transfer to you my 50 shares of the capital stock of Estelle Wyler, Inc. (herein called the Corporation) and herewith deliver the certificate for the same to you duly endorsed in blank with the proper transfer stamps attached thereto. * * *
2. You agree to pay to me for said shares of stock the sum of $30,000 by your own personal certified check or by bank cashier's check payable to my order, *121 upon the execution of this agreement, the receipt of which I hereby acknowledge. * * *
10. I understand that as of this date the Corporation is entering into a joint venture with Terminal Barber Shops, Inc. (hereinafter called "Terminal") and that the funds provided by Terminal will enable you to perform this agreement. * * *
Your signature at the foot hereof underneath the word ACCEPTED, together with my signature at the foot hereof, will make this the agreement between us. Yours very truly, S/ HARRIET KRAUS, Harriet Kraus ACCEPTED: S/ Estelle Wyler, Estelle Wyler The undersigned, ESTELLE WYLER, INC., hereby ratifies, approves and agrees to be bound by the provisions of Articles 3, 6, 7, 8 and 9 of the foregoing agreement to the extent that the same apply, affect or relate to the undersigned. ESTELLE WYLER, INC. By S/ Estelle Wyler Dated: March 12, 1960 President and Owner of 100% of the capital stock of ESTELLE WYLER, INC. Terminal acquired from Wyler, Inc., a one-half interest in the fixtures and equipment, good will, leasehold and leasehold improvements owned by Wyler, Inc., for a cash consideration of $40,000. Three-fourths of this consideration, *122 or $30,000, was not physically paid to Wyler, Inc., but was paid to Harriet on behalf of Wyler, Inc., by Terminal in the form of a cashier's check drawn by Terminal on the Manufacturers Trust Company. After Harriet received the $30,000 she endorsed her certificate of stock, Certificate No. 2 for 50 shares (representing one-half of the issued and outstanding stock of Wyler, Inc.) in blank, and handed the certificate to her lawyer, Charles Schwartz, who signed the certificate as a witness to Harriet's endorsement. Schwartz turned the certificate over to Alfred E. Santangelo, the attorney for both Estelle and Wyler, Inc. Santangelo kept the endorsed certificate in his file, not for the benefit of Estelle but for the benefit of Wyler, Inc., until the time it was received in evidence as Exhibit No. 1 of petitioner Estelle Wyler, Inc. Santangelo was the attorney who negotiated the terms of the contract dated March 1, 1960, between Terminal, Wyler, Inc., and Estelle. He did not assist in the drafting of the letter from Harriet to Estelle, dated March 12, 1960. That letter was dictated to Harriet by her attorneys Schwartz and Frolich. The certificate was not assigned or transferred to anyone. *123 The receipt by Harriet of the $30,000 and the blank endorsement by her of the certificate, and the turning over of the certificate to Santangelo for the benefit of Wyler, Inc., left Estelle as the sole owner of all of the issued and outstanding stock of Wyler, Inc. Estelle's interest in the assets of the business remained the same as they were before the deal with Harriet. Before the deal, Estelle had indirectly a 50 percent interest in the assets of the business as being the owner of 50 percent of the stock of Wyler, Inc. After the deal, Estelle still had indirectly a 50 percent interest in the assets of the business as being the owner of 100 percent of the stock of Wyler, Inc. Harriet's indirect ownership of 50 percent interest in the assets of the business had been transferred to Terminal so that Terminal and Wyler, Inc., could operate the business as a joint venture on an equal basis. Ultimate Findings of Fact In March 1960 Terminal paid $40,000 for one-half of the operating assets of Wyler, Inc. Instead of paying the entire $40,000 to Wyler, Inc., Terminal paid on behalf of Wyler, Inc., $30,000 of the $40,000 direct to Harriet for her one-half interest in the outstanding *124 capital stock of Wyler, Inc. Harriet endorsed her stock certificate representing the said one-half interest in blank and the stock previously held by Harriet was then held for the benefit of Wyler, Inc., by the latter's attorney, thus leaving Estelle as the sole owner of all the issued and outstanding capital stock of Wyler, Inc. Terminal and Wyler, Inc., then formed a joint venture with each contributing to the venture one-half of the operating assets of Wyler, Inc. Wyler, Inc., realized a long-term capital gain of $40,000 on the sale of one-half of the operating assets of Wyler, Inc., no basis having been established for such assets. Estelle did not receive a constructive dividend of $30,000 from Wyler, Inc. Opinion Petitioner Wyler, Inc., has failed to show that the respondent erred in determining that the $40,000 paid by Terminal pursuant to the agreement of March 1, 1960, constituted long-term capital gain income to petitioner. We so hold. The evidence clearly shows that Wyler, Inc., sold to Terminal one-half of its operating assets for the sales price of $40,000. Wyler, Inc., does not contend that the assets sold had any basis for computing gain or loss, and no evidence *125 of any basis was offered or even mentioned. We sustain the respondent's determination as to the first issue. On the second issue, we think the respondent erred in determining that Estelle received a "constructive dividend" of $30,000 from Wyler, Inc. It has long been recognized that "[questions] of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and the income tax laws enacted thereunder we must regard matters of substance and not mere form." Weiss v. Stearn, 265 U.S. 242 (1924); John M. Rogers, 44 T.C. 126, 136. See also Comtel Corp. v. Commissioner, 376 F. 2d 791 (C.A. 2, May 4, 1967), wherein the U.S. Court of Appeals, in affirming 45 T.C. 294, said that "The Tax Court had the power - indeed the duty - to look to the substance" of the transaction. Cf. Commissioner v. Danielson, 378 F. 2d 771 (C.A. 3, May 2, 1967) vacating and remanding 44 T.C. 549. Looking at the substance of the instant transaction, Estelle did not receive a constructive dividend of $30,000 from Wyler, *126 Inc. After the transaction was completed she was no richer than she was before. Before the transaction she indirectly owned 50 percent of the assets of the business being conducted by Wyler, Inc., by reason of her 50 percent stock ownership of Wyler, Inc. After the transaction, she still only owned indirectly 50 percent of the assets of the business although she was then the owner of 100 percent of the issued and outstanding stock of Wyler, Inc. The other 50 percent of the assets of the business that before the transaction had been owned indirectly by Harriet by reason of her 50 percent stock ownership of Wyler, Inc., had been sold by Wyler, Inc., to Terminal so that Terminal and Wyler, Inc., could operate the business as a joint venture. The elimination of Harriet as a stockholder of Wyler, Inc., was not done in accordance with the letter Harriet had written to Estelle on March 12, 1960. [1] Instead of Estelle's paying Harriet $30,000 for Harriet's stock, Estelle paid nothing and acquired no stock. It was Terminal who, on behalf of Wyler, Inc., paid Harriet $30,000 for her one-half stock interest in Wyler, Inc. After Harriet received the $30,000, she endorsed her certificate in blank. *127 The certificate was not assigned or transferred to anyone but was kept in Santangelo's file for the benefit of Wyler, Inc. [2] This left Estelle as the sole owner of all the issued and outstanding stock of Wyler, Inc. Under such circumstances, we do not think it can be found that Estelle received a constructive dividend of $30,000 from Wyler, Inc., and we so hold. [3]
*128 Decisions will be entered under Rule 50. Footnotes
1. On direct examination of Santangelo, the following testimony was given: THE COURT: What was the new venture? THE WITNESS: This was the same beauty shop, but they called it a joint venture, Terminal Barber - no, Estelle Wyler Beauty Salon, a Division of Terminal Barber Shops. BY MR. WILLNER: Q. Incorporated? A. No, the joint venture was not an incorporation. It was a partnership, or joint venture, they shared fifty per cent equally, Estelle Wyler, Inc. and the Terminal Barber Shop, and they operated as a joint venture. The same business as was operated by Nathanson and Miss Wyler in the name of Estelle Wyler, Inc. was now being operated in the name of Estelle Wyler Beauty Salon, with one half interest belonging to the Terminal Barber Shop and one half interest belonging to Estelle Wyler, Inc. THE COURT: And that belonging to the Barber Shop, is that what you say was purchased from Mrs. Nathanson? THE WITNESS: That is right. For forty thousand dollars they got the half interest of Mrs. Nathanson, but they took it in the form of a half interest in a joint venture. ↩
2. On redirect examination, Santangelo testified as follows: BY MR. WILLNER: Q. Mr. Santangelo, please tax your memory if you could, and didn't Mr. Schwartz of Schwartz and Frolich, who represented Mrs. Nathanson [turn] over the stock to Mr. Baumann [president of Terminal] from Terminal Barber Shops? A. As I said before, Mr. Willner, they didn't want the infirmities of the corporation. They wanted that set up so that they could start fresh, that they had a half interest in the business, and they didn't want the infirmities of the corporation, and they did not want to go through the corporation. Q. Who would normally own that stock after Mrs. Nathanson endorsed it? A. It would be turned back in to the corporation. Q. Which corporation? A. In to the treasury stock of Estelle Wyler, Inc. ↩
3. It may be noted in passing that Estelle filed a petition (docket No. 2245-62) with this Court for the calendar year 1959 in which the errors assigned were the action of the Commissioner in disallowing "Legal and accounting fees" of $9,775 and "Travel and entertainment" of $1,675 deducted on her return. We decided both issues against the petitioner (T.C. Memo. 1964-203) and were affirmed by the U.S. Court of Appeals, Second Circuit No. 29326, March 4, 1965, in an unreported opinion (see Wyler v. Commissioner, 15 A.F.T.R. 2d 949). The 1959 case is not referred to in any way in the pleadings or briefs of the parties in the instant case. No claim of res judicata or collateral estoppel is made or pleaded. Under such circumstances, we are bound by the evidence offered in the instant proceedings and have made our findings accordingly.↩